David Sturgeon-Garcia. Esq. (State Bar No. 157390)
**THE LAW OFFICES OF DAVID STURGEON-GARCIA**
1042 Country Club Drive, Suite 1A
Moraga, CA 94556
Telephone: 925.235.7290
Facsimile: 925.235.7319

Charles D. Marshall (State Bar No. 236444)
**MARSHALL LAW FIRM**
2121 N. California Blvd., Suite 290
Walnut Creek, CA 94596
Telephone: (925) 575-7105
Facsimile: (855) 575-7105
cdm@marshall-law-firm.com

Attorneys for Plaintiffs Charlotte B.
Milliner, Joanne Brem, and the putative class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLOTTE B. MILLINER, as trustee of the Charlotte B. Milliner Trust dated January 30, 1997, and as owner and holder of the CHARLOTTE B. MILLINER SEP IRA; JOANNE BREM, as Trustee of the Van Santen-Brem Revocable Trust, for themselves and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MUTUAL SECURITIES, INC., a California corporation; <br><br> Defendant. | Case No.: <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **DEMAND FOR JURY TRIAL** |

## I. INTRODUCTION

1. This Class Action Complaint follows and is related to the Class Action Complaint filed in this Court on April 20, 2015, entitled *Milliner v. Bock Evans Financial Counsel, Ltd.*, Case No. 15-cv-1763 TEH (the "Bock Evans Class Action.") The Bock Evans Class Action was brought by Charlotte Milliner and Joanne Brem, on their own behalf and on behalf of others similarly situated, who fell victim to the false written promises and "one size fits all" investment approach implemented by their investment advisor, Bock Evans Financial Counsel, Ltd. ("BEFC.") Contrary to its written representations and fiduciary duty of care, BEFC failed to diversify its clients' investment portfolio's by placing 100% or nearly 100% of their assets in high risk and highly speculative foreign mining stocks, including over-the-counter and penny stocks. BEFC then failed in its duty to make any significant adjustment to its clients' portfolios in response to economic and market conditions, resulting in the decimation of its clients' portfolios.

2. This Class Action is filed against Mutual Securities, Inc., ("MSI") the supervising broker-dealer which handled these same accounts. By operation of law, and through the express contractual representations it made to its clients, MSI owed Plaintiffs a duty to supervise the activities of BEFC and to *"determine the suitability of any investment recommendations and advice."* Contrary to its representations and duties, MSI failed to supervise BEFC and systematically and categorically failed to make any suitability determinations. As a result, the value of the BEFC portfolios under MSI's supervision have gone from $60 million to $4.17 million in just a few years, a drop of roughly $55.83 million, or 93%.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because the matter in controversy exceeds the sum of $5,000,000, and at least one member of the Class is a citizen of a State different than Defendant.

4. Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant MSI resides in

1  this District as defined under 28 U.S.C. § 1391(c)(2); and venue is proper under 28 U.S.C. §
2  1391(b)(2) because Plaintiffs' accounts at issue in this matter are maintained in California.

### III.   THE PARTIES

5.   Plaintiff Charlotte B. Milliner is the trustee of the Charlotte B. Milliner Trust dated January 30, 1997, and is the owner and holder of the Charlotte Milliner SEP IRA (hereinafter "Ms. Milliner."). Ms. Milliner owned two investment accounts managed by BEFC as her investment advisor, and MSI as her supervising broker-dealer. Ms. Milliner has lived in Oakland, California, during all relevant times. Ms. Milliner is 62 years old.

6.   Plaintiff Joanne Brem is the Trustee of the Van Santen-Brem Revocable Trust (hereinafter "Ms. Brem.") Ms. Brem owned one investment account managed by BEFC as her investment advisor, and MSI as her supervising broker-dealer. Ms. Brem has lived in San Rafael, California, during all relevant times. Ms. Brem is 61 years old.

7.   Defendant Mutual Securities, Inc. ("MSI") is a brokerage firm doing business in California with its principal place of business in Camarillo, California. MSI promotes itself as a "hybrid" broker-dealer firm ("hybrid is who we are") by establishing relationships with "entrepreneurial financial advisors who want to benefit from a competitive compensation arrangement." MSI entices financial advisors to associate with it by promising commission payouts (a portion of the commission generated from transactions placed through MSI) and by promising "friendly compliance" so that they don't get "bogged down with inefficient and non-productive compliance tasks." MSI calls its associated financial advisors (like Bock and Evans) "dually registered hybrid representatives."

8.   Bock Evans Financial Counsel, Ltd. ("BEFC") is a Registered Investment Advisor doing business in California with its principal place of business in Denver, Colorado. It provides continuous investment advice and equity portfolio management services to individuals solely on a discretionary basis, meaning that BEFC selects which and when securities are to be bought and

sold in a client's account without consultation with the client. The firm is co-owned and managed by Thomas Bock ("Bock") and Mary Evans ("Evans"), who also serve as registered representatives and branch office managers of Defendant MSI. It is not a party to this action but is the named defendant in the related Bock Evans Class Action.

### A. The Intertwined Relationship Between BEFC and MSI

9. As a condition to providing its services, BEFC *requires* that clients also hire MSI as their custodial and supervising broker-dealer. As stated by BEFC: "Our clients are required, under our arrangement with MSI, to open a brokerage account with MSI." As a result, "the Client does not select the brokers with whom the Firm uses to execute trades." One reason that BEFC requires clients to use MSI is because Bock and Evans, the principal executive officers of BEFC, are also licensed with and registered principals of MSI: "Because Mr. Bock and Ms. Evans are also registered representatives with MSI, MSI requires them to use MSI's custodial broker/dealer…" According to BEFC, Bock and Evans are branch office managers of MSI and approximately 25% of their time is spent on broker/dealer related activities.

10. MSI in turn requires that clients enter into a Brokerage Account Customer Agreement ("Brokerage Agreement") setting forth the "features and policies associated with their accounts." Through this Brokerage Agreement, in a section entitled Notices and Disclosures, Account Administration, MSI identifies to clients, including the Class Members, the various account functions that it is agreeing to perform. Among other promises, MSI represents that: "*As your broker/dealer, we will: determine the suitability of any investment recommendations and advice.*"

11. Contrary to its written representations, MSI systematically and categorically fails to determine the suitability of the investments made on behalf of its clients.

## IV.   SUITABILITY

12. Determining suitability is a fundamental duty of brokers. By hanging out a shingle to do business, brokers impliedly (and in this case explicitly) represent that they and their registered representatives can and will provide expert investment advice, will conduct business fairly and in the best interests of the customer, and will make recommendations of securities only if they have a reasonable basis for believing that they are appropriate (or suitable), for the customer.

13. The suitability duty requires that a broker not only consider the appropriateness of specific securities, but also how they impact overall investment strategies and the portfolio as a whole. In other words, the broker must consider overall portfolio risk, and not just the suitability of a particular security in a vacuum. Accordingly, it is generally accepted that the cornerstone of suitability is diversification and that diversification is essential to prudent investing. Suitability relies on the time honored investment maxim that risk can be reduced by diversification and that a portfolio of investments is truly diversified only when it is made up of distinctly separate and broadly different asset classes. Over-concentration must be avoided in favor of a diversified portfolio and a conscious concentration and lack of diversification constitutes a serious breach of duty.

14. Moreover, inherent in the duty of suitability is that it must be determined on a customer-specific basis. The broker must determine suitability for each specific client. Customer-specific suitability requires that a broker have a reasonable basis to believe that the recommendation is suitable for a customer based on that particular customer's investment profile. Therefore, in order to determine customer-specific suitability, a broker must obtain information from each and every client, and act reasonably based on that customer-specific information. *See*, for example, FINRA Rule 2090 (the "Know Your Customer Rule" modeled after former NYSE Rule 405(1)) which requires firms to use "reasonable diligence," in regard to the opening and maintenance of every account, to know the "essential facts" concerning every customer. That

information typically includes a customer's net worth, investment history, income, age, employment, tax status, time horizons, and investment objectives and risk tolerance.

15. The know-your-customer obligation arises at the beginning of the customer-broker relationship and continues throughout the relationship. This requirement imposes a continuing duty of inquiry to obtain relevant information from each customer relating to their financial situation and to keep such information current. It imposes an ongoing, continuous duty to monitor the prudence and suitability of investment choices.

### A. Defendants' Contrary "One Size Fits All" Approach

16. As described in detail in the Bock Evans Class Action, BEFC, with the assistance of MSI, employed a systematic "one size fits all" approach to all of their clients without regard for individual investment objectives and risk tolerance. They systematically purchased high risk and highly speculative mining stocks for all of their clients. They failed to employ a diversified strategy by investing 100% or nearly 100%, of clients' assets in high risk and highly speculative foreign mining stocks. Moreover, they maintained this lack of diversification for years, spanning the entire advisor-client relationship. As demonstrated through Plaintiffs' portfolios, the securities selected for the Plaintiffs had a continuous downward trend year, after year, after year. At no time were any significant adjustments made to Plaintiffs' or Class members' portfolios to reflect market conditions.

17. By operation of law, and through the express contractual representations it made to its clients, MSI owed Plaintiffs a duty to supervise the activities of BEFC and to *"determine the suitability of any investment recommendations and advice."* Contrary to its representations and duties, MSI failed to supervise BEFC and systematically and categorically failed to make any suitability determinations. As a result, Plaintiffs and the Class lost tens of millions of dollars in the midst of a powerful bull market.

**CLASS ACTION COMPLAINT**

### B. Defendants' Loaded their Clients' Portfolios with OTC Stocks

18. Over-the-counter stock (or OTCs) are securities which are traded through a dealer network rather than through a centralized formal exchange, such as the NYSE or Nasdaq. OTC, or off-exchange trading, is done directly between two parties, without any supervision of an exchange. A stock exchange has the benefit of facilitating liquidity, mitigates all credit risk concerning the default of one party in the transaction, provides transparency, and maintains the current market price. Because they are not required to report to the SEC, many OTC stocks are either penny stocks or are offered by companies with bad credit records. In an OTC trade, the price is not necessarily published for the public. OTCs tend to be closely held, extremely small and/or thinly traded. As such, most of these issuers do not meet the minimum listing requirements for trading on a national securities exchange. Many of these companies do not file periodic reports or audited financial statements with the SEC, making it very difficult for investors to find current, reliable information about those companies. For these reasons, OTCs can be among the most risky investments. Notwithstanding, the stocks selected for Plaintiffs and the Class were overwhelmingly high risk and highly speculative OTCs concentrated in foreign mining stock.

### C. Ms. Milliner's Experience

19. Ms. Milliner opened two investment accounts with BEFC; one was a SEP IRA Investment Account (the "Retirement Account") and the other was an investment account in the name of her Trust (the "Trust Account.") (collectively, the "Accounts.") As required by BEFC, both Accounts were opened as discretionary accounts.

20. Also as required by BEFC, Ms. Milliner entered into a written Brokerage Agreement engaging MSI as the supervising broker-dealer on the Accounts. Ms. Milliner read the Brokerage Agreement, and relied upon the representations made therein in opening and maintaining her Accounts with MSI. Through the Brokerage Agreement, MSI expressly

promised, among other things, that "*As your broker/dealer, we will determine the suitability of any investment recommendations and advice.*"

21. At the time Ms. Milliner opened these Accounts, BEFC provided her with its Brochures through which BEFC represented its qualifications, business practices, and investment approach. Ms. Milliner read the Brochures, and relied upon the representations made therein in opening and maintaining her Accounts with BEFC.

22. Thereafter, Ms. Milliner was asked to fill out a client information form through which Ms. Milliner answered questions relating to her financial situation, investment objectives and risk tolerances, under the belief, based on the representations in the Brochures, that BEFC and MSI would rely on this information in managing her Accounts. Rather, BEFC and MSI implemented a systematic "one size fits all" investment strategy which consisted of uniformly investing clients' assets in undiversified, high risk, and highly speculative foreign mining stocks.

23. Contrary to its written representations and its duties of care, BEFC did not employ a diversified strategy to her portfolios, but rather placed 100%, or nearly 100%, of Ms. Milliner's investment assets from *both* Accounts in foreign *mining* companies. In fact, the majority of the securities selected by BEFC and MSI on behalf of Ms. Milliner were OTC stocks.

24. Contrary to its own duty of care and its own written representations, MSI failed to supervise BEFC and failed to "determine the suitability of any investment recommendations and advice," and allowed a systematic "one size fits all" investment strategy which consisted of uniformly investing clients' assets in undiversified, high risk, and highly speculative foreign mining stocks.

25. As a direct and proximate result of MSI's breach of its duties, Ms. Milliner's retirement assets have been decimated. As reflected in the chart below, Ms. Milliner's Retirement Account dropped by more than $1,200,000.00:



Given Defendants' "one size fits all" investment strategy, the value of Ms. Milliner's second account, the Trust Account, suffered a similar fate, having dropped by more than $500,000.00:



By comparison, from January 3, 2011 to December 31, 2014, the Dow Jones Industrial Average *increased* in value by 53%, the S&P 500 by 62%, and the NASDAQ Composite by 76%.

26. As demonstrated through the change in value of her portfolios, the selected securities had a continuous downward trend for years. At no time did BEFC or MSI make any significant adjustment to Ms. Milliner's portfolios to reflect current economic and market conditions.

### D. Ms. Brem's Experience

27. Ms. Brem opened one investment account with BEFC. As required by BEFC, the account was opened as a discretionary account.

28. Also as required by BEFC, Ms. Brem entered into a written Brokerage Agreement engaging MSI as the supervising broker-dealer on the Account. Ms. Brem read the Brokerage Agreement, and relied upon the representations made therein in opening and maintaining her Account with MSI. Through the Brokerage Agreement, MSI expressly promised, among other things, that *"As your broker/dealer, we will determine the suitability of any investment recommendations and advice."*

29. At the time Ms. Brem opened her account, BEFC provided her with its Brochure through which BEFC represented its qualifications, business practices, and investment approach. Ms. Brem read the Brochures, and relied upon the representations made therein in opening and maintaining her account with BEFC.

30. Thereafter, Ms. Brem was asked to fill out a client information form through which Ms. Brem answered questions relating to her financial situation, investment objectives and risk tolerances, under the belief, based on the representations in the Brochure, that BEFC and MSI would rely on this information in managing her account. Rather, BEFC and MSI implemented a systematic "one size fits all" investment strategy which consisted of uniformly investing clients' assets in undiversified, high risk, and highly speculative foreign *mining* stocks. In fact, the majority of the securities selected by BEFC and MSI on behalf of Ms. Brem were OTC stocks.

31. Contrary to its written representations and its duties of care, BEFC did not employ a diversified strategy to her portfolio, but rather placed 100%, or nearly 100%, of Ms. Brem's investment assets in foreign *mining* companies.

32. Ms. Brem opened her account with BEFC with an initial contribution of $200,000.00. By the time she transferred her portfolio to a different advisor in March 2015, the value of her portfolio had dropped to $34,784.15, a decline of over $165,000.00:

---

**CHANGE IN VALUE OF YOUR PORTFOLIO**
*$ thousands*

[Chart showing portfolio value declining from ~200,000 in 2011 to ~150,000 in 2012, ~60,000 in 2013, and ~50,000 in 2014]

33. Contrary to its own duty of care and its own written representations, MSI failed to supervise BEFC and failed to "determine the suitability of any investment recommendations and advice," and allowed a systematic "one size fits all" investment strategy which consisted of uniformly investing clients' assets in undiversified, high risk, and highly speculative foreign mining stocks.

34. As demonstrated through the change in value of her portfolio, the selected securities had a continuous downward trend for years. At no time did BEFC or MSI make any significant adjustment to Ms. Brem's portfolio to reflect current economic and market conditions.

35. Plaintiffs are informed and believe that their experience with MSI as described herein is typical of the experience of the Class. Plaintiffs further plead that MSI misrepresented its duty to "determine the suitability of any investment recommendations and advice" (as reflected in the standard form Brokerage Agreement) in a similar manner to all Class members, and that Plaintiffs and Class members were similarly exposed to MSI's breach of duty given its systematic and categorical failure to determine suitability.

## V. CLASS ACTION ALLEGATIONS

36. Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all persons or entities others who are similarly situated.

37. Plaintiffs seek to represent the following proposed class under Rule 23(b)(3):

> All persons and entities who were or currently are clients of Mutual Securities, Inc. as their broker-dealer with Bock Evans Financial Counsel, Ltd. as their investment advisor.

38. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the Class is Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, or any of them; the Judge assigned to this action; and any member of the Judge's immediate family.

39. Plaintiffs' action meets the prerequisites of Rule 23(a) because:

    a. **Numerosity:** The class as defined above consists of dozens of individuals and is so numerous that joinder of all members as individual plaintiffs is impracticable. Though the exact number and identity of class members is not presently known, they can be identified through Defendant's records.

    b. **Commonality:** There are questions of law and fact common to the Class. Such common questions include, but are not limited to:

        i. What was the scope of the duty owed by MSI to the Class;

        ii. Whether MSI provided uniform, written representations to the Class that it would "determine the suitability of any investment recommendations and advice";

        iii. Whether MSI determined suitability on behalf of Class Members;

      iv.    Whether MSI monitored Class portfolios under its suitability duty and made adjustments to reflect current economic and market conditions;

      v.    Whether MSI is liable for damages and the amount of such damages;

      vi.    Whether MSI's conduct warrants an award of punitive damages.

  c.  **Typicality:** Plaintiffs' claims are typical of the Class in that they are all clients of BEFC, all Class Members were required to use MSI as their broker-dealer; all Class Members entered into a Brokerage Agreement with MSI whereby MSI uniformly and expressly represented that it would "determine the suitability of any investment recommendations and advice," and because MSI systematically and categorically failed to determine the suitability of the investments made on behalf of the Class;

  d.  **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests that are antagonistic to or in conflict with the interests of the Class, and Plaintiffs engaged competent counsel experienced in complex litigation and class actions.

40.  This elements of Rule 23(b) are also met in that:

  a.  Questions of law or fact common to members of the class each predominate over any questions affecting only individual members (Rule 23(b)(3)(A));

  b.  The class action is superior to other available methods for the fair and efficient adjudication of the controversy (Rule 23(b)(3)(B));

c.  Whatever difficulties may exist in the management of the class action will be greatly outweighed by the benefits of the class action procedure for fair and efficient adjudication of the controversy. (Rule 23(b)(3)(C)).

## FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT

41. Plaintiffs hereby incorporate each of the paragraphs of this Complaint as though fully set forth herein.

42. MSI entered into a Brokerage Agreement with Plaintiffs whereby MSI expressly represented and agreed that it would *"determine the suitability of any investment recommendations and advice."* Plaintiffs are informed and believe and thereon allege that MSI entered into a Brokerage Agreement with each member of the Class in substantially the same form as Plaintiffs' Brokerage Agreement.

43. Plaintiffs performed their obligations under the Brokerage Agreement.

44. MSI breached the Brokerage Agreement, by, among other ways, failing to supervise BEFC and by categorically and systematically failing to make any suitability determinations.

45. MSI breached the Brokerage Agreement by implementing a uniform investment strategy consisting of undiversified, high risk and highly speculative investments for Plaintiffs and the Class consisting mostly of OTC stock in foreign mining companies.

46. MSI further breached the Brokerage Agreement by failing to continuously monitor Clients' portfolios against changes in economic and market conditions, and failing to make adjustments to its clients' portfolios consistent with such changes.

47. MSI breached the Brokerage Agreement by employing a systematic "one size fits all" approach to all of its clients without regard for each client's individual investment objectives and risk tolerance.

48. As direct and proximate result of MSI's breach, Plaintiffs and the Class have been damaged in an amount according to proof.

## SECOND CLAIM FOR RELIEF
### BREACH OF DUTY

49. Plaintiffs hereby incorporate each of the paragraphs of this Complaint as though fully set forth herein.

50. By virtue of the relationship between Plaintiffs and MSI, a relationship was created whereby Plaintiffs and the Class placed their trust, confidence, and reliance on MSI's expertise and applicable duty of care. MSI's duties included, but were not limited to, the duty to deal fairly and honestly with Plaintiffs, the duty of full disclosure, the duty to act in the utmost good faith and in the best interest of Plaintiffs and the Class, and the duty to "determine the suitability of any investment recommendations and advice."

51. As their supervising broker-dealer, MSI also owed Plaintiffs and the Class the duty to continuously monitor customers' portfolios against changing financial and market conditions, and make adjustments to those portfolios consistent with current economic and market conditions to ensure continued suitability.

52. MSI breached its duty of care by failing to determine suitability and by implementing a uniform investment strategy consisting of undiversified, high risk and highly speculative OTC stock in foreign mining companies.

53. MSI further breached its duty of care by failing to continuously monitor Clients' portfolios against changes in economic and market conditions, and failing to make adjustments to its clients' portfolios consistent with such changes.

54. MSI breached its duty of care by employing a systematic "one size fits all" approach to all of its clients without regard for each client's individual investment objectives and risk tolerance.

55. As a broker-dealer, MSI had a duty to supervise all of its associated persons and registered representatives, including Bock and Evans. MSI breached its duty to supervise by systematically and categorically failing to make any suitability determinations, relying instead on

"friendly compliance" so that they don't get "bogged down with inefficient and non-productive compliance tasks."

56. As direct and proximate result of MSI's breach of its duties, Plaintiffs and the Class have been damaged in an amount according to proof. Plaintiffs and the Class are also entitled to seek rescission for each unlawful transaction executed by MSI on behalf of Plaintiffs and the Class.

57. In committing the acts described herein, MSI acted maliciously, fraudulently, and oppressively, thereby entitling Plaintiffs and the Class to recover punitive damages in an amount according to proof.

### THIRD CLAIM FOR RELIEF
### GROSS /WILLFUL/WANTON NEGLIGENCE

58. Plaintiffs hereby incorporate each of the paragraphs of this Complaint as though fully set forth herein.

59. The duties owed by broker-dealers set forth a duty of care owed by MSI to Plaintiffs and the Class. Pursuant to this standard of care, MSI owed various of duties to Plaintiffs and the Class, including but not limited to the duty to deal fairly and honestly with Plaintiffs, the duty of full disclosure, the duty to act in the utmost good faith and in the best interest of Plaintiffs and the Class, and the duty to "determine the suitability of any investment recommendations and advice."

60. As their supervising broker-dealer, MSI also owed Plaintiffs and the Class the ongoing duty to continuously monitor customers' accounts and make adjustments consistent with changing economic and market conditions.

61. MSI breached its duty of care to Plaintiffs and the Class, and was grossly negligent in supervising the portfolios of Plaintiffs and the Class, in that its conduct, both actions and failure to act, reflects a lack of any care and an extreme departure from the ordinary standard of care. MSI's gross negligence, willful misconduct, recklessness, and utter lack of care is reflected

in the fact that it failed, among other things, to determine the suitability of any investment recommendations and advice, and failed to continuously monitor clients' accounts against changing economic and market conditions and make adjustments to those portfolios in light of current conditions. Instead, MSI employed a systematic "one size fits all" approach to all of its clients without regard to customer-specific suitability.

62. As a direct and proximate result of MSI's gross negligence, Plaintiffs and the Class have been damaged in an amount according to proof.

## FOURTH CLAIM FOR RELIEF
### FRAUD

63. Plaintiffs hereby incorporate each of the paragraphs of this Complaint as though fully set forth herein.

64. Through its Brokerage Agreement, MSI uniformly and expressly represented that it would "determine the suitability of any investment recommendations and advice."

65. This representation was material in inducing Plaintiffs and the Class into hiring and retaining MSI as their supervising broker-dealer.

66. At the time MSI made the above-referenced promise and representation to Plaintiffs and the Class, MSI knew it to be false as it had no intention of performing suitability determinations. The true facts were that MSI never intended to determine the suitability of any investment recommendations and advice. Rather, MSI intended to employ and did employ a systematic "one size fits all" investment approach to all of its clients.

67. MSI made these representations with the intention of inducing Plaintiffs and Class members into opening and maintaining accounts with MSI.

68. Plaintiffs and Class members justifiably relied on MSI's false representations. At the time the promises occurred, and at the time Plaintiffs took the actions herein alleged, they

were ignorant of MSI's secret intention not to perform and Plaintiffs could not, in the exercise of reasonable diligence, have discovered MSI's secret intentions. Plaintiffs reasonably relied on these representations in opening and maintaining accounts with MSI. Had Plaintiffs known the actual facts, they would not have opened nor maintained accounts with MSI.

69. As a direct and proximate result of MSI's fraud, Plaintiffs and the Class have suffered damages in an amount according to proof.

70. Plaintiffs and Class members are also entitled to seek rescission for each unlawful transaction made on behalf of Plaintiffs and the Class.

71. In committing the acts described herein, MSI acted maliciously, fraudulently, and oppressively, thereby entitling Plaintiffs and the Class to recover punitive damages in an amount according to proof.

### FIFTH CLAIM FOR RELIEF
### CONSTRUCTIVE FRAUD

72. Plaintiffs hereby incorporate each of the paragraphs of this Complaint as though fully set forth herein.

73. By virtue of the relationship between Plaintiffs and MSI, a relationship was created whereby Plaintiffs and the Class placed their trust, confidence, and reliance on MSI's expertise and applicable duty of care. MSI's duties included, but were not limited to, the duty to deal fairly and honestly with Plaintiffs, the duty of full disclosure, the duty to act in the utmost good faith and in the best interest of Plaintiffs and the Class, and the duty to "determine the suitability of any investment recommendations and advice."

74. As their supervising broker-dealer, MSI also owed Plaintiffs and the Class the duty to continuously monitor customers' portfolios against changing financial and market conditions, and make adjustments to those portfolios consistent with current economic and market conditions to ensure continued suitability.

75. Despite having voluntarily accepted the trust and confidence of Plaintiffs and the

Class, and in violation of this relationship of trust and confidence, MSI abused this trust and confidence by, among other ways, failing to determine suitability and by implementing a uniform investment strategy consisting of undiversified, high risk and highly speculative investments for Plaintiffs and the Class consisting mostly of OTC stock in foreign mining companies.

76. Plaintiffs and Class members justifiably relied on the trust and continued fidelity of MSI to their detriment. As a result of MSI's aforementioned breach of duties to Plaintiffs, MSI gained an advantage in that Plaintiffs and the Class opened and maintained accounts with MSI.

77. As a direct and proximate result of MSI's constructive fraud, Plaintiffs and the Class suffered damage in an amount according to proof.

78. Plaintiffs and Class members are also entitled to seek rescission for each unlawful transaction made on behalf of Plaintiffs and the Class.

79. In committing the acts described herein, MSI acted maliciously, fraudulently, and oppressively, thereby entitling Plaintiffs and the Class to recover punitive damages in an amount according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows and as permitted as to each cause of action:

A. For an Order certifying this matter as a class action and appointing Plaintiffs and their Counsel to represent the Class;

B. For compensatory damages in an amount according to proof;

C. For rescission;

D. For lost opportunity costs;

E. For attorneys' fees and costs;

F. For costs of suit and all other recoverable costs and expenses to the fullest extent allowed by law;

G. For interest at the maximum legal rate from the earliest possible date on all sums

awarded;

H. For punitive damages in an amount according to proof, and

I. Such other and further relief as may be just and proper.

Dated: July 21, 2015         THE LAW OFFICES OF DAVID STURGEON-GARCIA

By: *David Sturgeon-Garcia*
David Sturgeon-Garcia, Esq.

Attorneys for Plaintiffs Charlotte B. Milliner, Joanne Brem, and the putative class

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs and the Class hereby demand a trial by jury for all causes of action, claims or issues in this action which are triable as a matter of right to a jury.

Dated: July 21, 2015         THE LAW OFFICES OF DAVID STURGEON-GARCIA

By: *David Sturgeon-Garcia*
David Sturgeon-Garcia, Esq.

Attorneys for Plaintiffs Charlotte B. Milliner, Joanne Brem, and the putative class