UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLOTTE B. MILLINER, et al.,

    Plaintiffs,

v.

MUTUAL SECURITIES, INC.,

    Defendant.

Case No. 15-cv-03354-TEH

**ORDER RE: SEPTEMBER 12, 2016 HEARING**

Counsel shall come prepared to address the following questions at the September 12, 2016 hearing on Plaintiffs' motion for partial summary judgment:

**For Plaintiffs**

1. Is your argument that Defendant had a duty to supervise the investment advisory activities of Bock and Evans dependent on the Court's earlier Order, ECF No. 39, finding a duty was created by the "suitability clause" in the parties' Brokerage Agreement? In other words, do you argue that the Defendant's duty to supervise Bock and Evans would exist even without the "suitability clause" in the Brokerage Agreement?

2. You argue that *Chevron* requires that the court grant deference to the NTMs (Pls.' Reply 5:1-2 n. 2). However, NTMs do not appear to be promulgated by an administrative agency such as the Securities and Exchange Commission. Can you cite any cases holding NTMs are entitled to *Chevron* deference?

3. Can you cite any cases addressing how much deference, if any, courts should give to the Notice to Members ("NTMs") that accompany FINRA rules?

4. You argue 15 U.S.C. §78cc "invalidates provisions in brokerage agreements that require customers to waive compliance with FINRA rules." (Pls.' Reply

7:20-21).  Can you cite any cases where courts have applied § 78cc in this particular way?

5. Several recent Ninth Circuit cases establish that there are two elements required for "control person" liability: (1) a primary violation of federal securities laws and (2) actual power or control over the primary violator. *See, e.g., Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  What federal security laws, if any, have you alleged Defendant violated?

6. What was the reasoning behind the Plaintiffs refusing to provide some documents that Defendant asked for?  (*See* Def.'s Opp'n. at 15-16; Pls.' Reply at 11:15-12:1).  Was there a particular difficulty involved with turning over the requested documents?

**For Defendant**

1. Can you cite any cases where courts, in applying FINRA rules (or other related rules), have differentiated between RR/IAs acting as registered representatives or as investment advisors?

2. If we accept your argument that FINRA Rules 3270 and 3280 only apply when registered agents are acting as such (i.e., not as investment advisors) (Def.'s Opp'n. 6:22-7:1), wouldn't broker-dealers always be able to contract their way out of FINRA's supervision requirement?

3. If we accept your argument that the application of FINRA Rules may depend on whether a person is acting as a registered representative or an investment advisor, how should the Court determine in what capacity a person is acting?

4. Defendant argues the non-binding nature of the NTMs accompanying the relevant rules (Def.'s Opp'n. 9:8-23), yet Defendant's Representative Agreement for Registered Representatives expresses a commitment to comply with "The Rules" which is defined to include "all rule or conduct interpretations and directives issued by the NASD."  Also, Defendant's Written Supervisory Procedures Manual directly cites several NTMs.  How do you reconcile your position regarding NTMs in your Opposition with the inclusion of NTMs in your policies?

5.     Regarding the discovery dispute brought up in your opposition (*See* Def.'s Opp'n. at 14-17), please explain exactly what facts you expect or hope to find that should prevent the Court from ruling on Plaintiffs' summary judgment motion now?  Why did Defendant not bring up the discovery issue earlier?

**IT IS SO ORDERED.**

Dated: 09/08/16

_____
THELTON E. HENDERSON
United States District Judge