UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLOTTE B. MILLINER, et al.,

Plaintiffs,

v.

MUTUAL SECURITIES, INC.,

Defendant.

Case No. 15-cv-03354-TEH

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

On July 27, 2016, Plaintiffs filed a Motion for Partial Summary Judgment re: MSI Duty to Supervise Bock and Evans ("Pls.' Mot.") (ECF No. 41).  After carefully considering the parties' written and oral arguments, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for the reasons set forth below.

**I. BACKGROUND**

This class action is related to another class action separately filed in this Court: *Milliner v. Bock Evans Financial Counsel, Ltd.*, No. 15-cv-1763 TEH (the "Bock Evans Class Action").[1]  The Bock Evans Class Action was brought by the same Plaintiffs as the present class action, to challenge the "'one size fits all' investment approach implemented by their investment advisor, Defendant Bock Evans Financial Counsel, Ltd. ('BEFC')." Compl. ¶ 1 (EFC No. 1).  Plaintiffs brought the present class action against Defendant Mutual Securities, Inc. ("MSI") because of MSI's relationship with BEFC.  Specifically, BEFC required that clients hire MSI as their broker-dealer. *Id.* ¶ 9.  Plaintiffs allege one

[1] Default has been entered in the Bock Evans Class Action.  No. 15-cv-1763 TEH, ECF No. 66 (N.D. Cal. May 18, 2016).

United States District Court
Northern District of California

reason BEFC required clients to use MSI is because Thomas Bock and Mary Evans, the principal executive officers of BEFC, were registered representatives of MSI. *Id.* ¶ 9. In other words, Bock and Evans were "dually registered as registered representatives and commissioned brokers of MSI and as investment advisors and principals of BEFC." MSI's Opp'n to Pls.' Mot. for Partial Summ. J. at 1–2 (ECF No. 32). MSI explicitly approved this dual arrangement when it signed off on both Bock's and Evans' completed "Outside Business Questionnaire" in which they notified MSI they would be providing investment advisory services as BEFC for asset-based compensation. Decl. of Counsel in Supp. of Pls.' Mot. for Partial Summ. J. re: MSI Duty to Supervise Bock and Evans ("Marshall Decl."), Exs. L–M (ECF No. 42). Thereafter, Plaintiffs allege BEFC "plac[ed] 100% or nearly 100% of their assets in high risk and highly speculative foreign mining stocks," resulting in the value of BEFC's portfolios going "from $60 million to $4.17 million in just a few years, a drop of roughly $55.83 million, or 93%." Compl. ¶ 2.

In the present motion, Plaintiffs seek a ruling from this Court that MSI owed Plaintiffs a duty to supervise its registered representatives, Bock and Evans, including a duty to supervise their outside investment advisory activities. Pls.' Mot. at 2.

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The court may not weigh the evidence and must view the evidence in the light most

favorable to the nonmoving party.  *Id.* at 255.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings or materials in the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). However, on an issue for which its opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion. *Anderson*, 477 U.S. at 250.

## III. DISCUSSION

### A. MSI's Duty to Plaintiffs is a Question of Law and Therefore Properly Addressed at the Summary Judgment Stage

As a preliminary matter, "the existence of a legal duty in a given factual situation is a question of law for the courts to determine."  *Hayes v. Cty of San Diego*, 736 F.3d 1223, 1232 (9th Cir. 2013) (citation omitted).  Because the determination of MSI's duty is a question of law, the Court may address this matter at the summary judgment stage. *Parsons v. Crown Disposal Co.*, 15 Cal. 4th 456, 465 (1997).

While MSI's duty to Plaintiffs may be determined as a matter of law, here, the determination of the scope of that duty depends on whether the Court may consider the

United States District Court
Northern District of California

rules of self-regulatory organizations to define the scope of that duty.  Therefore, the Court first turns to the statutes and regulations governing MSI and, second, whether it may look to self-regulatory rules in defining MSI's duty to Plaintiffs.

**B. Statutes and Regulations Governing MSI**

**1. The Securities Exchange Act of 1934 Allows the Securities and Exchange Commission to Establish Self-Regulatory Organizations ("SROs") and to Oversee SRO's Rulemaking and Procedures**

The Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78a–78lll (2015), "created a system of supervised self-regulation in the securities industry whereby [SROs] such as the [National Association of Securities Dealers ("NASD")] or the [New York Stock Exchange ("NYSE")] could promulgate their own governing rules and regulations, subject to oversight by the Securities and Exchange Commission." *Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1128 (9th Cir. 2005).

Under the Exchange Act, SROs are required to file all proposed rules with the Securities and Exchange Commission ("Commission"), along with a statement justifying the basis and purpose of the proposed rule.  15 U.S.C. § 78s(b)(1) (2015).  In turn, for most proposed rules[2], the Commission must give public notice of the proposed rule and provide an opportunity for comment.  *Id.*  Notably, the U.S. Supreme Court has recognized, "[n]o proposed rule change may take effect unless the SEC finds that the proposed rule is consistent with the requirements of the Exchange Act, 15 U.S.C. § 78s(b)(2); and the Commission has the power, on its own initiative, to 'abrogate, add to, and delete from' any

---

[2] Section 78s(b)(3)(A) reserves three types of proposed rule changes that do not require public notice or express Commission approval.  Yet, such proposed rules must be consistent with applicable federal and state law.  Further, the Commission has authority to suspend such proposed rules within sixty days of their filing if suspension is "necessary or appropriate in the public interest, for the protection of investors, or otherwise [furthers the purpose of the Exchange Act]."  15 U.S.C. § 78s(b)(3)(C).

United States District Court
Northern District of California

SRO rule if it finds such changes necessary or appropriate to further the objectives of the Act." *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 233 (1987) (quoting 15 U.S.C. § 78s(c)).

### 2. Broker-Dealers and their Registered Representatives are Required to Register with an SRO

The Exchange Act requires, among other things, that broker-dealers register with the Commission before engaging in securities transactions.  15 U.S.C. § 78o (2015). Additionally, the Exchange Act requires broker-dealers to maintain membership with an SRO.  *Id.* § 78o(b)(8); *Kleinser v. Sec. Exch. Comm'n*, 539 F. App'x 7, 9 (2d Cir. 2013). Individuals who work for a registered broker-dealer are recognized as "associated persons", 15 U.S.C. 78(c)(18) (2015) , or "registered representatives", SEC. EXCH. COMM'N, *Guide to Broker-Dealer Registration*, https://www.sec.gov/divisions/marketreg/bdguide.htm (last updated July 29, 2016). Registered representatives, as natural persons associated with a broker-dealer, do not fall within the scope of § 78o; therefore, they are not required to register with the Commission. *Id.*  However, they may be required to register with the SRO of which their employer is a member.  *Id.*  Lastly, "[t]he Commission does not recognize the concept of 'independent contractors' for purposes of the Exchange Act, even if an arrangement with an associated person satisfies the criteria for 'independent contractor' status for other purposes[.]"  *In the Matter of William V. Giordano*, SEC Release No. 36742, 1996 WL 21031 (Jan. 19, 1996), at *4.[3]

---

[3] "The SEC's interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the regulation."*Dreiling v. Am. Express Co.*, 458 F.3d 942, 953 n. 11 (9th Cir. 2006) (citing *Auer v. Robbins*, 519 U.S. 452 (1997)).

United States District Court
Northern District of California

### 3. FINRA is a Recognized SRO that Requires Adherence to Its Rules

The Financial Industry Regulatory Authority, Inc. ("FINRA")[4] is an SRO under the Exchange Act, 15 U.S.C. § 78c(a)(26) (2015), and also "the primary regulatory body for the broker-dealer industry." *Godfrey v. Fin. Indus. Regulatory Auth., Inc.*, No. CV16-2776 PSG(PJWx), 2016 WL 4224956, at *2 (C.D. Cal. 2016) (citation omitted). FINRA is responsible for regulatory oversight of all securities firms that do business with the public and, to achieve its objectives, the organization may propose rules aimed at governing its member firms and associated individuals. *Sacks v. Sec. Exch. Comm'n*, 648 F.3d 945, 948 (9th Cir. 2011). Indeed, the Ninth Circuit has recognized that "Congress has vested the Financial Industry Regulation Authority . . . with the power to promulgate rules that, once adopted by the SEC, have the force of law." *McDaniel v. Wells Fargo Invs., LLC*, 717 F.3d 668, 673 (9th Cir. 2013) (citing 15 U.S.C. § 78s(b)). As a condition of FINRA membership, members agree "to comply with the federal securities laws, the rules and regulations thereunder, . . . the Rules of [FINRA], and all rulings, orders, directions, and decisions issued and sanctions imposed under the [FINRA Rules]." FINRA Bylaws art. IV, § 1(a)(1).[5] Registered representatives of members are also required to be registered with FINRA, FINRA Bylaws art. V, § 1, and to comply with its rules, FINRA Rule 0140 ("The Rules shall apply to all members and persons associated with a member.").

///

///

---

[4] FINRA was created through the consolidation of NASD and NYSE. The consolidation was approved by the Commission on July 26, 2007 and became effective July 30, 2007. Order Approving Consolidation of NASD and NYSE, 72 Fed. Reg. 42169 (Aug. 1, 2007).
[5] All FINRA Bylaws, FINRA Rules, and Notice to Members cited in this opinion can be found at http://finra.complinet.com (last visited Sept. 14, 2016).

United States District Court
Northern District of California

## C. Case Law Establishes that SRO Rules Governing Members Can Inform the Scope of a Common Law Duty

While "[i]t is well established that violation of an exchange rule will not support a private claim," *In re Verifone Sec. Litig.*, 11 F.3d 865, 870 (9th Cir. 1993), courts have often looked to such rules in defining the scope of common law duties. Indeed, while the Ninth Circuit has not directly addressed whether SRO rules can define the scope of a common law duty, it has recognized that SRO rules "reflect the standard to which all brokers are held." *Mihara v. Dean Witter & Co., Inc.* 619 F.2d 814, 824 (9th Cir. 1980) Moreover, several other courts have gleaned guidance from SRO rules in defining the scope of a duty. *See, e.g., Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766 AG (ANx), 2010 WL 2674456, at *11 (C.D. Cal. June 30, 2010) ("Plaintiff might be able to sufficiently allege that Defendants had and breached a duty of conduct *informed by rules such as NYSE Rule 405.*") (emphasis added); *Fitzpatrick v. Sec. Exch. Comm'n*, 63 F. App'x 20, 21 (2d Cir. 2003) ("The NASD's rules impose a duty to respond to document requests on persons associated with member firms.").[6]

---

[6] Several other courts have also relied on SRO rules to determine the scope of a duty. *See, e.g.,* Miley v. Oppenheimer & Co., Inc., 637 F.2d 318, 333 (5th Cir. 1981) abrogated on other grounds by Dean Witter Reynolds Inc. v. Byrd, 105 S. Ct. 1238 (1981) ("NYSE and NASD rules are excellent tools against which to assess in part the reasonableness or excessiveness of a broker's handling of an investor's account."); Sec. Exch. Comm'n v. Badian, No. 06 Civ 2621.(LTS)(DFE), 2010 WL 4840063, at *2 (S.D.N.Y. Nov. 19, 2010) (holding that NASD Rule 3010(a) imposes a duty on members); As You Sow v. AIG Fin. Advisors, Inc., 584 F. Supp. 2d 1034, 1048 (M.D. Tenn. 2008) (holding SRO rules assist courts in defining the extent of a legal duty at common law); Colbert & Winstead, PC 401(k) Plan v. AIG Fin. Advisors, Inc., No. 3:07-1117, 2008 WL 2704367, at *10 (M.D. Tenn. 2008) ("[T]he relationships defined and governed by the NASD may define the scope of a duty of a broker dealer."); Javitch v. First Montauk Fin. Corp., 279 F. Supp. 2d 931, 938 (N.D. Ohio 2003) ("[T]he standard in the industry is reflected in the rules of both NASD and NYSE."); Lange v. H. Hentz & Co., 418 F. Supp. 1376, 1383 (N.D. Texas 1976) ("NASD rules are admissible on the issue of what fiduciary duties are owed by a broker to an investor.").

United States District Court
Northern District of California

In light of these authorities, the Court holds it can properly consider the FINRA rules governing MSI to determine whether it had a duty to supervise the investment advisory activities of its registered representatives. Hence, the Court now turns to address the application of FINRA rules to MSI.

**D. Because MSI Approved Bock and Evans Outside Investment Activities, for which Bock and Evans Received Selling Compensation, FINRA Rule 3280 Required MSI to Supervise their Investment Advising Activities as its Own**

As an initial matter, MSI is registered with FINRA. Marshall Decl., Ex. A. MSI does not contest the application of FINRA regulations to itself. In fact, MSI concedes that "Broker-Dealers are required to be members of FINRA and are subject to regulations promulgated by both the SEC and FINRA pursuant to the Securities Exchange Act . . . ." Def.'s Opp'n at 5. It is also undisputed that Bock and Evans were both registered representatives of MSI at the time they advised Plaintiffs regarding their investments. *See* Marshall Decl. at Exs. B–C. The crux of Plaintiffs' argument lies in the application of FINRA Rule 3280 to MSI. FINRA Rule 3280(a) provides: No person associated with a member shall participate in a private securities transaction except in accordance with the requirements of this Rule. A "private securities transaction" is defined in FINRA Rule 3280(e)(1) as "any securities transaction outside the regular course or scope of an associated person's employment with a member . . . ." FINRA Rule 3280(b) provides:

> Prior to participating in any private securities transaction, an associated person shall provide written notice to the member with which he is associated describing in detail the proposed transaction and the person's proposed role therein and stating whether he has received or may receive selling compensation in connection with the transaction; provided however that, in the case of a series of related transactions in which no selling compensation has been or will be received, an associated person may provide a single written notice.

Upon receiving written notice in accordance with section (b), the broker-dealer is required to advise the associated person, in writing, whether the member approves or disapproves the person's participation in the proposed transaction. FINRA Rule 3280 (c)(1). Most relevant to this case, if the broker-dealer approves such a transaction, "the transaction shall be recorded on the books and records of the member and the member *shall supervise the person's participation in the transaction as if the transaction were executed on behalf of the member*." FINRA Rule 3280(c)(2) (emphasis added).

Here, there is no dispute that Bock and Evans disclosed their outside investment advisory activities to MSI. Marshall Decl., Exs. L–M. Nor is there a dispute that MSI approved the activities, or that Bock and Evans were to receive asset-based fees for these activities. *Id.* Rather, the dispute among the parties is whether Bock and Evans' outside activities were for "selling compensation", thus requiring MSI to supervise the transactions of MSI as their own. Thus, the Court turns to address this issue.

**1. Bock and Evans' Outside Investment Advisory Activities Were for Selling Compensation**

Section (e)(2) of FINRA Rule 3280 defines "selling compensation" as:

> any compensation paid directly or indirectly from whatever source in connection with or as a result of the purchase or sale of a security, including, though not limited to, commissions; finder's fees; securities or rights to acquire securities; rights of participation in profits, tax benefits, or dissolution proceeds, as a general partner or otherwise; or expense reimbursements.

MSI argues that FINRA Rule 3280 did not impose an obligation on it to supervise Bock and Evans' activities because selling compensation must be "in connection with or as a result of the purchase or sale of a security." Def.'s Opp'n at 8. Here, MSI argues, Bock and Evans' compensation was fee-based rather than tied to any particular transaction

United States District Court
Northern District of California

because "[t]he fees did not change whether BEFC made one trade in a quarter or a hundred trades in a quarter"; therefore, their activities were not rendered for selling compensation and did not create a duty to supervise. *Id.* at 8–9.  Not so.

A number of Notice to Members ("NTMs") issued by NASD address the application of FINRA Rule 3280 where a registered representative is also a registered investment advisor ("RR/RIA").[7]  First, NTM 91-32 (1991) discusses the applicability of NASD art. III, § 40 to the investment activities of RR/IAs.  NTM 91-32 states in relevant part:

> The [NASD's National Business Conduct Committee ("NBCC")] believes that *Section 40 should apply to all investment advisory activities conducted by registered representatives other than their activities on behalf of the member that result in the purchase or sale of securities by the associated person's advisory clients*. . . . [If] the RR/IA receives compensation for, or as a result of, such advisory activities, from a person or entity other than the member, the books, records, and supervision requirements of Section 40 would apply.  The Committee believes that to conclude otherwise would permit registered persons to participate in securities transactions outside the scope of the oversight and supervision of the employer member and of a self-regulatory organization to the potential detriment of customers.

*Id.* (emphasis added).  Additionally, on the issue of "selling compensation", NTM 91-32 states:

> The Committee determined that *the receipt of any compensation by RR/IAs outside the scope of their employment with a member, whether that compensation is directly related to the transactions (e.g., a portion of the commission) or in the form of an asset- or performance-based advisory fee, constitutes the receipt of selling compensation*. Members that allow their registered persons to conduct such activities are fully subject to the requirements of Section 40 and *must, therefore, record all such transactions on their books and*

---

[7] While NTMs 91-32, 94-44, and 96-33 refer to NASD art. III, § 40 and NTM 01-79 refers to NASD Rule 3040, both of these rules are predecessors to FINRA Rule 3280.  NASD art. III, § 40 was renamed to NASD Rule 3040, and NASD Rule 3040 was wholly adopted, without substantive change, as FINRA Rule 3280.  Therefore, these NTMs are directly applicable to FINRA Rule 3280. *See infra* Section D.2.

United States District Court
Northern District of California

1

> *records and supervise them as if these transactions had occurred at the member.*

2

*Id.* (emphasis added).

3

4

Second, in NTM 94-44 (1994), the NBCC determined that § 40 "applies to any

5

transaction in which the dually registered person participated in the execution of the trade."

6

The notice defined "execution" as "participation that goes beyond a mere

7

recommendation."  More importantly, NTM 94-44 explicitly confirmed that if an RR/RIA

8

received asset-based management fees for participating in the execution of a transaction on

9

behalf of a customer, the transaction would be subject to § 40, thereby requiring the

10

broker-dealer to record and supervise the transactions.  *Id.*

11

12

Third, NTM 96-33 (1996) reaffirmed that if a broker-dealer's registered

13

representative is engaged in outside investment advisory activities for an asset-based fee

14

and the broker-dealer approves the activities, the broker-dealer must "supervise activity in

15

the affected accounts as if it were its own."  The notice also states that the broker-dealer's

16

recordkeeping and supervisory procedures "must enable the member to properly supervise

17

the RR/IA by aiding in the member's understanding of the nature of the service provided

18

by an RR/IA, the scope of the RR/IA's authority, and the suitability of the transactions."

19

20

Lastly, NTM 01-79 (2001) states "if a firm approves an associated person's

21

participation in a securities transaction, the firm assumes certain critical regulatory

22

responsibilities that go along with offering and selling securities to customers. . . . [T]he

23

firm must exercise appropriate supervision over the associated person in order to prevent

24

violations of the securities laws."

25

26

27

28

11

This Court holds that the NTMs accompanying FINRA Rule 3280 undoubtedly establish that MSI had a duty to supervise Bock and Evans' outside advisory investment activities. These NTMs are clear that, for purposes of applying FINRA Rule 3280, selling compensation includes asset-based fees. Therefore, if a broker-dealer approves the outside advisory investment activities of its registered individuals who receive asset-based fees, the broker-dealer must properly supervise the activities as its own. Such is the case here.

**2. FINRA Rule 3280 Did Not Impliedly Reject Prior NTMs**

MSI attempts to downplay the significance of the NTMs by arguing the NTMs were "necessarily rejected" when they were not explicitly integrated into FINRA Rule 3280 upon its adoption. Def.'s Opp'n at 9. MSI's argument is as follows: First, NASD Rule 3040 defined selling compensation as "transactional in nature." Second, subsequent NTMs "seem to advocate a change in the definition of 'selling compensation' to include fee based compensation." *Id.* Therefore, because FINRA adopted Rule 3280 without any changes to the definition of "selling compensation" after these NTMs were issued, they were rejected by FINRA. *Id.* This argument fails.

FINRA adopted NASD Rule 3040 as FINRA Rule 3280 "without any substantive changes", explicitly stating that the new rule's definition of the term "selling compensation" is "substantively identical to the definitions in NASD Rule 3040." Proposed Rule Change to Adopt FINRA Rule 3280, 80 Fed. Reg. 52530, 52531 (Aug. 31, 2015). Because FINRA adopted NASD Rule 3040 in its entirety, without change, it follows that the NTMs related to NASD Rule 3040 continue to apply to FINRA Rule 3280. Consequently, MSI's argument that the above-mentioned NTMs were impliedly rejected fails.

United States District Court
Northern District of California

### 3. The Court Must Grant Deference to the Commission's Interpretation of SRO Rules and to the NTMs Themselves.  Both Support the Court's Holding Here.

The Commission's interpretation of FINRA Rule 3280 supports the Court's holding.  The Ninth Circuit has previously granted the Commission deference in determining the meaning of SRO rules.  For example, in *Krull v. Sec. Exch. Comm'n*, 248 F.3d 907 (9th Cir. 2001), the court considered whether the Commission had properly upheld a violation of an NASD rule.  In affirming the Commission's determination, the court recognized the Commission's responsibility "to approve all rules, policies, practices, and interpretations prior to implementation" and held "[b]ecause of the Commission's expertise in the securities industry, we owe deference to its construction of NASD's Rules of Fair Practice."  *Id.* at 911–12 (citing *Alderman v. Sec. Exch. Comm'n*, 104 F.3d 285, 288 (9th Cir. 1997)).  Thereafter, the *Krull* court proceeded to quote an SEC administrative case, *In re Winston H. Kinderdick*, *46 S.E.C. 636,* 1976 *SEC LEXIS 783, at *8,*(Sept. 21, 1976)*, in which the Commission elaborated on trading that violated a specific NASD rule, to support the court's application of the rule.  *Krull*, 248 F.3d at 912–13.

Likewise, here, the Commission has issued statements directly interpreting NASD Rule 3040 to apply to registered representatives who engage in outside investment advising activities for asset-based fees.  For example, in *In the Matter of the Application of Keith L. Mohn,* SEC Release No. 42144, 1999 WL 1036827, at *5 (Nov. 16, 1999), the Commission acknowledged that, according to NTM 94-44, NASD Rule 3040 applies to any transaction in which an RR/RIA participated in the execution of the trade.  Also, in *Definition of Terms*, SEC Release No. 44291, 2001 WL 1590253 (May 11, 2001), the SEC cited NTM 96-33 in stating:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

> NASD Rule 3040 requires broker-dealers to review all transactions in which a registered representative participates, including transactions where the registered representative acts as an investment adviser.  The registered broker-dealer must develop and maintain a record keeping system """[sic] to enable the member to properly supervise the RR/IA by aiding the member's understanding of the nature of the service provided by an RR/IA, the scope of the RR/IA's authority, and the suitability of the transactions.

*Id.* at *52 n. 289.  Both of these interpretations clearly illustrate the Commission's understanding that FINRA Rule 3280 requires broker-dealers to supervise the advisory activities of their registered representatives.

Courts have also granted deference to an SRO's interpretation of its own rules, including NTMs.  *See, e.g., Ronay Family Ltd. P'ship v. Tweed, 216 Cal. App. 4th 830, 842* (2013) ("Although the NASD's interpretation of its own arbitration rule is not binding on a court, it is entitled to substantial deference."); *Heath v. Sec. Exch.Comm'n*, 586 F.3d 122, 138–39 (2d Cir. 2009) (acknowledging the court's obligation to afford some level of deference to the NYSE's or SEC's interpretation of NYSE rules); *Dawson v. New York Life Ins. Co.*, 135 F.3d 1158, 1168 (7th Cir. 1998) (holding a district court's reliance on two NTMs to form a jury instruction was proper because a court may give weight to an exchange's interpretation of its own rules).  Because the NTMs are an SRO's interpretation and clarification of its own rules, the Court must grant the NTMs deference in applying SRO rules.  Naturally, here, the Court must give substantial weight to the NTMs interpreting FINRA Rule 3280; these NTMs support the Court's holding.

///

///

14

**E. Section 78cc of the Exchange Act Precludes MSI from Using the Parties' Agreements to Avoid FINRA Rules.**

MSI also argues that the Investment Advisory Agreement between Plaintiffs and BEFC releases MSI from the obligation to supervise Bock and Evans because the agreement made it clear that "any investment advice or recommendations made by Bock and Evans, were made solely in their capacity as Investment Advisers for BEFC and not in their capacity as Registered Representatives of MSI." Def.'s Opp'n at 1–2. Also, MSI points to several documents arguing they illustrate MSI's very limited role in the relevant transactions while establishing Bock and Evans as the primary actors to whom the plaintiffs granted substantial authority. Def.'s Opp'n at 2, 4, 6, 11–12.

These arguments also fail. Notably, none of the above-mentioned NTMs, nor the Commission's interpretation of these NTMs, recognize a distinction between RR/IAs acting as registered representatives or as investment advisors. Also, a broker-dealer cannot contract itself out of its SRO obligations. Section 78cc of the Exchange Act prohibits "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, *or of any rule of a self-regulatory organization . . . .*" 15 U.S.C. § 78cc (2015) (emphasis added). The words of § 78cc are clear: any agreement releasing a broker-dealer from complying with its obligations under FINRA rules is void as a matter of law. Here, where FINRA rules specifically require MSI to supervise the advisory activities of its registered representatives, MSI cannot argue that agreements or documents between the parties release it from its supervisory obligations under FINRA. The Court's application of §78cc

United States District Court
Northern District of California

15

is consistent with the Commission's rejection of independent contractor relationships for

purposes of the Exchange Act.  *Matter of William V. Giordano*, 1996 WL 21031, at *4.

**F. *Petersen v. SCC* is Inapposite to this Case**

Next MSI cites to *Petersen v. Sec. Settlement Corp.*, 226 Cal. App. 3d 1445 (1991),

arguing that MSI's minimal participation relieves it from liability.  In *Petersen*, an elderly

couple sued a brokerage firm after they followed the advice of their broker to invest their

money into penny stocks and lost the entire value of the investment.  *Id.* at 1449.  The

broker worked for Guildcor Financial, Inc. ("Guildcor") but the transaction was carried out

by Securities Settlement Corporation ("SSC"), which functioned as a clearing broker for

Guildcor.  Under a clearing agreement between SSC and Guildcor, SSC agreed to carry out

all stock transactions ordered by Guildcor's customers.  *Id.*  SSC moved for summary

judgment arguing that because it was only a clearing broker, it had no fiduciary duty to

investigate the suitability of the investments recommended by the broker.  In upholding the

trial court's finding for summary judgment in favor of SSC, the court found three facts to

be especially important: (1) SSC never made representations regarding the suitability for

plaintiffs of their investments; (2) plaintiffs never relied on SSC for advice regarding their

investments; and (3) SSC was only involved in the relevant transactions as a clearing

broker.  *Id.* at 1450.  The court held SSC owed no duty to plaintiffs because SSC lacked a

direct and personal relationship with the plaintiffs and because there was no evidence that

SSC knew of the broker's failure to fully advise the plaintiffs.  *Id.* at 1455, 1457.

*Petersen* is easily distinguishable from this case.  First, unlike the parties in

*Petersen*, where the broker-dealer was completely removed from the plaintiffs, here, the

broker-dealer has a direct relationship with the Plaintiffs – BEFC required clients to open a

brokerage account with MSI.  Marshall Decl. Ex. J at 14.  Second, unlike *Petersen* where the advising broker was unaffiliated to the broker-dealer that actually carried out the transactions, here, Bock and Evans were both registered representatives of the broker-dealer that carried out the transactions.  Not to mention that MSI received actual notice of Bock and Evans' outside advisory activities.  Thus, while FINRA Rule 3280 may not have applied in *Petersen*, it directly applies here.  Lastly, the *Petersen* case was decided on January 18, 1991– prior to the release of NTMs relevant to this case; therefore, *Petersen* sheds no light on the application of these NTMs.  In sum, *Petersen* is inapposite to this case.[8]

### G. MSI Failed to Show How Further Discovery Would Affect the Court's Determination of Its Duty

In opposing summary judgment, MSI also argues the motion should be denied because "the parties are in the midst of a discovery dispute" in which "Plaintiffs have produced no documents whatsoever during the course of this action—literally zero." Def.'s Opp'n at 14–15.  MSI attests it has had to obtain several documents from BEFC, including the Investor Advisory Agreement between the Plaintiffs and BEFC.  *Id.* at 15.  It also alleges that the discovery dispute has delayed the scheduling of the Plaintiffs' depositions.  In short, MSI argues because of the risk there may be other crucial documents

---

[8] MSI also cited four decisions supporting its proposition that "courts generally decline to impose on Broker-Dealers the typical duties of disclosure, supervision, or suitability": Mars v. Wedbush Morgan Sec., 231 Cal. App. 3d 1608, 1614-15 (1991); Edwards & Hanly v. Wells Fargo Sec. Clearance Corp., 602 F.2d 478, 484 (2d Cir. 1979); In re Atlantic Fin. Mgt. , Inc. Sec. Litig., 658 F. Supp. 380, 381 (D. Mass. 1986); and O'Keefe v. Courtney, 655 F. Supp. 16, 20 n. 3 (N.D. Ill. 1985).  These decisions are also distinguishable because none of them mention any particular SRO rule or the NTMs relevant here; thus, they fail to address the relationship between such rules and the scope of a broker-dealer's duty.

United States District Court
Northern District of California

in Plaintiffs' possession, which define the relationship between MSI and Plaintiffs,

summary judgment is inappropriate at this time.

MSI's argument fails for one main reason: MSI's scope of duties would not be

affected by discovery relating to the relationship of the parties.  The core, relevant (and

undisputed) facts are that (1) MSI was a broker-dealer registered with FINRA; (2) Bock

and Evans were registered representatives of MSI; and (3) MSI approved the outside

advising activities of Bock and Evans.  These three facts establish MSI had a duty to

supervise the advisory activities of Bock and Evans.  This duty would not be altered by

documents about "who was giving the Plaintiffs investment advice and recommendations,

and in what capacity."  Def.'s Opp'n at 16.

## H. Plaintiff Failed to Make a Prima Facie Case of Control Person Liability

Plaintiffs' motion also seeks a determination from the Court that MSI was a

"control person" of Bock and Evans under Section 20(a) of the Exchange Act.  15 U.S.C. §

78t(a) (2015).  Pls.' Mot. at 2.  Section 20(a) provides:

> Every person who, directly or indirectly, controls any person
> liable under any provision of this chapter or of any rule or
> regulation thereunder shall also be liable jointly and severally
> with and to the same extent as such controlled person to any
> person to whom such controlled person is liable, unless the
> controlling person acted in good faith and did not directly or
> indirectly induce the act or acts consulting the violation of
> cause of action.

In support of Plaintiffs' argument that section 20(a) of the Act deems MSI a control

person, Plaintiffs cite *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990).  In

*Hollinger*, the Ninth Circuit was addressing whether Titan – a registered broker-dealer

regulated by the Commission and by the NASD – could be held vicariously liable as a

"controlling person" under § 20(a) for the securities laws violations of its registered

18

representative.  *Id.* at 1572.  In particular, the court was addressing whether Titan exercised "actual power or influence" over the registered representative.  The court determined that "[b]ecause a sales representative must be associated with a registered broker-dealer in order to have legal access to the trading markets, the broker-dealer always has the power to impose conditions upon that association, or to terminate it."  *Id.* at 1573–74.  As a result, the court held that to establish a broker-dealer as a controlling person the plaintiff "need only show that [the registered representative] was not himself a registered broker-dealer but was a representative employed by or associated with a registered broker-dealer."  *Id.* at 1574.

Plaintiffs argue that, here, where it is undisputed that Bock and Evans were registered representatives of MSI, *Hollinger* requires the Court to determine it was a control person of Bock and Evans.  Pls.' Mot. at 25.  Even though *Hollinger* supports Plaintiffs' argument for finding MSI a control person of Bock and Evans, and while the Court acknowledges *Hollinger* has not been expressly overruled, more recent Ninth Circuit case law establishes that control person liability requires more than a showing of actual power or influence over the employee – as would be present in a relationship between a broker-dealer and a registered representative.  To establish control person liability, the plaintiff must prove two elements: (1) a primary violation of federal securities laws; *and* (2) that the defendant exercised actual power or control over the primary violator.  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  This test has been used by the Ninth Circuit for some time.  *See, e.g., In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir.

2009); *No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. West Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003).

Here, the Plaintiffs have failed to plead (and much less prove) MSI violated federal securities laws.  Plaintiffs' complaint alleges five claims for relief.  None of them alleges a violation of federal securities laws.  *See* Compl. ¶¶ 14–19.  And while Plaintiffs argued during oral arguments that a violation of FINRA is equivalent to a violation of securities law, as mentioned above, violations of SRO rules do not give rise to a private cause of action.  *In re Verifone*, 11 F.3d 865 at 870.  Thus, a violation of FINRA rules, by itself, cannot satisfy the first element of control person liability.  As such, the Plaintiffs fail to prove a prima facie case under §20(a) of the Exchange Act.  Therefore, the Court DENIES Plaintiffs' request to establish MSI as a control person of Bock and Evans.

## VI. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion as to MSI's duty to supervise Bock and Evans, and DENIES Plaintiffs' motion as to establishing MSI as a "control person" under §20(a) of the Exchange Act.

**IT IS SO ORDERED.**

Dated:  09/19/16

_____
THELTON E. HENDERSON
United States District Judge