UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLOTTE B. MILLINER, et al., <br> Plaintiffs, <br> v. <br> MUTUAL SECURITIES, INC., <br> Defendant. | Case No. 15-cv-03354-DMR <br><br> **ORDER ON DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND STIPULATED PROTECTIVE ORDER** <br><br> ***REDACTED VERSION*** <br><br> Re: Dkt. No. 176 |

Following a settlement conference before the undersigned, Plaintiffs Charlotte B. Milliner and Joann Brem executed a written settlement agreement with Defendant Mutual Securities, Inc. ("MSI") on June 1, 2018. The parties subsequently consented to have this court conduct all further proceedings pursuant to 28 U.S.C. § 636(c). [Docket Nos. 167, 168.] MSI now moves for an order enforcing the settlement agreement and the stipulated protective order entered in this case, arguing that Plaintiffs and their counsel have breached them. [Docket No. 176.] This matter is appropriate for resolution without oral argument. Civ. L.R. 7-1(b). Having carefully considered the parties' submissions, the motion is granted in part and denied in part, and partially held in abeyance.

I.  **ADMINISTRATIVE MOTION TO SEAL**

MSI moves to seal the settlement agreement at issue in its entirety, as well as the portions of its motion quoting the settlement agreement. [*See* Docket Nos. 173, 185.] Given the particular circumstances of this case, where MSI argues that Plaintiffs and their counsel have breached the settlement agreement's confidentiality provision, good cause exists to permit filing the actual agreement and certain references to it under seal. *See Kamakana v. City & Cty. of Honolulu,* 447 F.3d 1172, 1179-80 (9th Cir. 2006) ("good cause" standard applies to requests to seal records attached to non-dispositive motions); *Phillips ex rel. Estates of Byrd v. General Motors Corp.,* 307

F.3d 1206, 1212 (9th Cir. 2002) (noting that courts have granted protective orders to protect confidential settlement agreements). For the same reason, the court redacts the specific terms of the settlement agreement that appear in this order. MSI's administrative motion to file under seal is granted, and MSI is granted leave to file the following filings under seal: Exhibit 2 to the April 5, 2019 Fredricks declaration (Docket No. 173-5, ECF pp. 19-23); Exhibit 7 to the Gilotti statement of claim, attached as Exhibit 3 to the Fredricks declaration (Docket No 173-5, ECF pp. 149-153); and portions of MSI's motion (Docket No. 173-3), as follows: 2:3-4, 3:7-8, 3:18-20, 4:8-13, and 5:24-26.

## II. BACKGROUND

Milliner and Brem filed this putative class action against MSI on July 21, 2015, alleging claims stemming from MSI's brokerage agreement with Plaintiffs.[1] *See* Compl. ¶ 2. The undersigned conducted a settlement conference on June 1, 2018 which resulted in a full resolution of Plaintiffs' individual claims. [Docket No. 166.] Milliner, Brem, and MSI executed a settlement agreement the same day. Fredricks Decl., Apr. 5, 2019, ¶ 3, Ex. 2 (Settlement Agreement). On June 5, 2018, with the parties' consent pursuant to 28 U.S.C. § 636(c), the matter was reassigned to this court for all purposes. [Docket Nos. 167-169.] The case was dismissed on September 11, 2018. [Docket No. 172.]

In relevant part, the settlement agreement provides for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The settlement agreement included a confidentiality provision, as follows:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] This lawsuit is related to another case filed in this court, *Milliner v. Bock Evans Financial Counsel, Ltd.*, No. 15-cv-1763 JD, in which Milliner and Brem challenged the investment approach by their investment advisor, Bock Evans Financial Counsel, Ltd. ("Bock Evans").

2

[redacted]

Settlement Agreement ¶ 11.

The settlement agreement also provides that [redacted] *Id.* at ¶ 9.

On February 5, 2019, Plaintiffs' counsel David Sturgeon-Garcia filed a statement of claim with FINRA against MSI and five individuals on behalf of a different client, Vincent F. Gilotti. Fredricks Decl. ¶ 4, Ex. 3 (Gilotti claim). Gilotti's FINRA claim includes the history of this litigation. It notes that Milliner and Brem settled their individual claims against MSI and dismissed the class claims without prejudice. In support of the statement that "any and all claims held by putative class members, like Mr. Gilotti, were preserved," Gilotti cites the settlement agreement and attached a complete copy as an exhibit to his claim. Gilotti claim 9, Ex. 7. Additional exhibits to Gilotti's claim include portions of transcripts of depositions taken in this case as well as what MSI describes as "documents . . . produced in response to a subpoena during the Milliner litigation, and which were marked as confidential." *See* Gilotti claim Exs. 2, 5, 6, 7; Fredricks Decl. ¶ 6.[2]

---

[2] Plaintiffs filed separate objections to portions of the Dennett and Fredricks declarations in support of the motion and moved to strike the same. [Docket No. 180.] The court did not rely on the portions of the declarations to which Plaintiffs objected in reaching this opinion. The objections and motion to strike are therefore denied as moot.

3

1  MSI now moves to enforce the settlement agreement, as well as the parties' stipulated
2  protective order which was entered on January 31, 2016. [*See* Docket No. 23 (Protective Order).]
3  It contends that Plaintiffs and/or their counsel have violated the terms of the settlement agreement
4  as follows: 1) Sturgeon-Garcia attached the settlement agreement along with confidential
5  documents and deposition transcripts produced and/or used in this case and marked as confidential
6  to the Gilotti claim in violation of the settlement agreement's confidentiality provision; and 2) the
7  settlement agreement requires Milliner to dismiss her FINRA statement of claim but to date she
8  has not done so. MSI further argues that Sturgeon-Garcia violated the protective order by
9  attaching as exhibits to the Gilotti claim documents and deposition transcripts used in this
10 litigation and marked as confidential. MSI asks the court to order Plaintiffs and Sturgeon-Garcia
11 to pay MSI its attorneys' fees and costs incurred in enforcing the settlement agreement.

## III. LEGAL STANDARD

### A. Jurisdiction to Enforce the Settlement Agreement

The parties do not dispute that the court has jurisdiction to enforce the settlement agreement. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380-81 (1994) (explaining that a court has ancillary jurisdiction to enforce a settlement agreement when the parties agree to continuing or retention jurisdiction); Docket No. 166.

A "motion to enforce [a] settlement agreement essentially is an action to specifically enforce a contract," and "[a]n action for specific performance without a claim for damages is purely equitable and historically has always been tried to the court." *Adams v. Johns–Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989) (citation and internal quotations marks omitted). Thus, "the court may hear evidence and make factual determinations." *Fair Hous. Council of Cent. Cal., Inc. v. Tylar Prop. Mgmt. Co.*, 975 F. Supp. 2d 1115, 1118 (E.D. Cal. 2012) (citing *Stewart v. M.D.F., Inc.*, 83 F.3d 247, 251 (8th Cir. 1996)). A court may order compliance with a settlement agreement in light of evidence of a party's non-compliance. *See, e.g., Fisher v. Biozone Pharm., Inc.*, No. 12-CV-03716-LB, 2017 WL 1097198, at *1 (N.D. Cal. Mar. 23, 2017) (prohibiting the plaintiff from "making any further disparaging comments about the defendants" in violation of the settlement agreement's non-disparagement term and ordering the plaintiff to fully comply with the

"settlement agreement's non-disparagement term").

"The interpretation of a settlement agreement is governed by principles of state contract law." *Botefur v. City of Eagle Point, Or.*, 7 F.3d 152, 156 (9th Cir. 1993) (citing *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1990)). "This is so even where a federal cause of action is 'settled' or 'released.'" *Id*. (citing *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992)). Here, California contract law governs the analysis because the parties litigated and settled the case in this state. "Under California law, the intent of the parties determines the meaning of the contract. The relevant intent is 'objective'—that is, the intent manifested in the agreement and by surrounding conduct—rather than the subjective beliefs of the parties." *United Commercial Ins. Serv*, 962 F.2d at 856 (citations omitted). "The mutual intention of the parties is determined by examining factors including the words used in the agreement, the surrounding circumstances under which the parties negotiated or entered into the contract, and the subsequent conduct of the parties." *Ambat v. City & Cty. of San Francisco*, No. C 07-03622 SI, 2011 WL 2118576, at *2 (N.D. Cal. May 27, 2011) (citing *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Ct. App. 1998); *Hernandez v. Badger Constr. Equip. Co*., 28 Cal. App. 4th 1791, 1814 (Ct. App. 1994)).

### B. Jurisdiction to Enforce the Protective Order

"It is well established that a federal court may consider collateral issues after an action is no longer pending," *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 395 (1990), and may assert ancillary jurisdiction "to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at 380. Although ancillary jurisdiction may not "be used as a basis for adjudicating post-dismissal disputes involving the merits of an action if the final order fails to expressly reserve jurisdiction," the court may exercise jurisdiction over collateral disputes regarding compliance with protective orders. *Colaprico v. Sun Microsys., Inc*., No. 90-20610 SW, 1994 WL 514029, at *2 (N.D. Cal. Aug. 22, 2014) (finding party in civil contempt of protective order after final judgment entered).

## IV. DISCUSSION

### A. Alleged Violations of the Settlement Agreement

#### 1. Disclosure of the Settlement Agreement

MSI argues that Plaintiffs and Sturgeon-Garcia are in violation of the confidentiality provision of the settlement agreement based on the fact that Sturgeon-Garcia attached a copy of the agreement as an exhibit to the Gilotti claim. According to MSI, the exceptions in the confidentiality provision that permit disclosure of the agreement do not apply here.

In opposition, Plaintiffs note that there is "no evidence that Ms. Milliner or Ms. Brem disclosed anything to anyone." Opp'n 1. They do not dispute that Sturgeon-Garcia attached the settlement agreement to the Gilotti claim but argue that his actions cannot not be imputed to Plaintiffs. *Id*. at 2. They further argue that Sturgeon-Garcia is not bound by the settlement agreement's confidentiality provision because he was not a party to the agreement, citing *Monster Energy Company v. Schechter*, 26 Cal. App. 5th 54 (2018), *review granted*, 239 Cal. Rptr. 3d 662 (2018). *Id*. at 2.

In *Monster Energy*, the court held that an attorney representing two plaintiffs could not be liable to the defendant for breach of a confidentiality provision in a settlement agreement, even though the agreement provided that the "'[p]laintiffs and their counsel agree' to keep the terms of the agreement confidential" and the attorney signed the agreement under the words, "Approved as to form and content." 26 Cal. App. 5th at 57. The court observed that "[a]n essential element of any contract is the mutual consent of the parties," and that "the consent of the parties to a contract must be communicated by each party to the other." *Id*. at 65 (quotations and citations omitted). While noting that "the confidentiality provisions of the settlement agreement did at least purport to bind the Attorneys," the court held that the issue was not one of contractual interpretation, as "a party cannot bind another to a contract simply by so reciting in a piece of paper. It is rudimentary contract law that the party to be bound must first *accept* the obligation." *Id*. (quotation omitted, emphasis in original). The court concluded that "[n]o matter how plainly the contract provided that the Attorneys were bound, they could not actually be bound unless they manifested their consent." *Id*.

The *Monster Energy* court also examined the effect of the attorney's signature of the settlement agreement under the words, "approved as to form and content." It held that such a signature "means only that the document has the attorney's professional thumbs-up," and "does not objectively manifest the attorney's intent to be bound." *Id.* at 68-69.

Plaintiffs assert that Sturgeon-Garcia was not a party to the settlement agreement, and note that unlike the attorney in *Monster Energy*, Sturgeon-Garcia did not approve the agreement as to form and content. Therefore, they argue, he is not bound by its terms, including the confidentiality provision, "as a matter of law." Opp'n 4; *see Monster Energy*, 26 Cal. App. 5th at 69 ("the language in the settlement agreement purporting to impose obligations on the Attorneys was a nullity, unless and until the Attorneys consented to it.").

The California Supreme Court granted review of *Monster Energy* on November 14, 2018, and ordered the parties to brief two issues, one of which is relevant here: "When a settlement agreement contains confidentiality provisions that are explicitly binding on the parties and their attorneys and the attorneys sign the agreement under the legend 'APPROVED AS TO FORM AND CONTENT,' have the attorneys consented to be bound by the confidentiality provisions?" *See Monster Energy Co. v. Schechter*, 239 Cal. Rptr. 3d 662 (2018). Plaintiffs inexplicably failed to bring this to the court's attention, simply citing *Monster Energy* as settled law. Pending review by the California Supreme Court, the Court of Appeal's opinion "has no binding or precedential effect, and may be cited for potentially persuasive value only." Cal. R. Ct. 8.1115(e)(1). Therefore, the question of whether Sturgeon-Garcia is bound by the confidentiality provision in the settlement agreement remains unsettled.

Accordingly, the court orders the following: pending the California Supreme Court's decision in *Monster Energy*, Sturgeon-Garcia shall comply with the confidentiality provision of the settlement agreement unless and until relieved of this obligation by this court. Specifically, within seven days of the date of this order, Sturgeon-Garcia must withdraw the settlement agreement from Gilotti's FINRA claim. Nothing in the record suggests that Gilotti will be prejudiced in any way by its withdrawal, or that the settlement agreement in this case is material or even relevant to Gilotti's claim. This portion of MSI's motion is held in abeyance. Within 14

7

1    days of the California Supreme Court's decision in *Monster Energy*, the parties shall submit a
2    joint letter advising the court of the decision. The court will order further briefing, if necessary, or
3    take the matter under submission on the papers already filed.

### 2. Disclosure of Materials Used in this Litigation

MSI next argues that Sturgeon-Garcia also violated the settlement agreement's confidentiality provision by attaching documents produced and deposition transcripts used in this case as exhibits to the Gilotti claim. According to MSI, these discovery materials fall under the confidentiality provision of the settlement agreement because they are part of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Settlement Agreement ¶ 11.

Plaintiffs failed to address this argument in their opposition. However, MSI's position is not persuasive. "Interpretation of a release or settlement agreement is governed by the same principles applicable to any other contractual agreement." *General Motors Corp. v. Superior Court*, 12 Cal. App. 4th 435, 439 (1993). In contract interpretation disputes, "the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party." *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 107 Cal. App. 4th 516, 524 (2003). The "clear and explicit meaning" of contractual provisions "interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage, controls judicial interpretation. Thus, if the meaning a layperson would ascribe to contract language is not ambiguous," the court applies that meaning. *Santisas v. Goodin*, 17 Cal. 4th 599, 608 (1998) (internal citations omitted).

Here, the parties did not define the word "event" in the settlement agreement; therefore, the court can consider "the dictionary definition to determine the ordinary and popular meaning." *See Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1195 (9th Cir. 2007). Merriam-Webster defines "event" as "something that happens," or an "occurrence." https://www.merriam-webster.com/dictionary/event (last visited on 6/24/2019). Under this definition, the phrase ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ does not include discovery materials, as they were not "occurrences" in the litigation or "something that happen[ed]." Therefore, MSI's interpretation of

8

the phrase ▮▮▮▮▮▮▮▮▮▮▮▮ as including discovery materials is not a reasonable interpretation. The court concludes that Sturgeon-Garcia's submission of those materials with the Gilotti claim did not violate the confidentiality provision of the settlement agreement.

### 3. Milliner's Failure to Dismiss Her FINRA Claim

MSI next argues that Milliner is in breach of the settlement agreement because she has not requested a dismissal of her FINRA claims against MSI.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ Settlement Agreement ¶ 4.

Plaintiffs argue that the settlement agreement provides no deadline by which Milliner must request dismissal of her FINRA claims. They also assert that "no dismissal can be requested or entertained because the FINRA Arbitration is currently stayed, and has been stayed since approximately August 2015." Opp'n 10; Sturgeon-Garcia Decl., Apr. 22, 2019, ¶ 9. Milliner's continuing failure to dismiss her FINRA claim does not violate the exact wording of the settlement agreement, but it is baffling why the claim is still pending at this point. Plaintiff presented no evidence that Milliner is unable to dismiss her FINRA claims due to the stay, nor did she provide any real explanation or justification for her failure to do so. Milliner shall dismiss her FINRA claims against MSI within seven days of the date of this order.

## B. Alleged Violations of the Protective Order

Finally, MSI argues that Plaintiffs and Sturgeon-Garcia breached the stipulated protective order by attaching confidential documents and deposition transcripts from this litigation to Gilotti's claim. MSI's argument on this issue is not a model of clarity. Specifically, MSI did not identify which specific exhibits to the Gilotti claim are at issue (instead citing to the entire claim) and did not identify the specific provision or provisions of the Protective Order that it claims Plaintiffs and Sturgeon-Garcia breached.

Based on the court's review of the entire Gilotti claim, it appears that Exhibits 2, 5, and 6

are at issue. Exhibit 2 consists of a six-page document that appears to contain account information, including account information specific to Gilotti. All pages of the exhibit except the first are labeled "confidential." Exhibit 5 consists of excerpts of the November 15, 2016 deposition of Julie Cohen, and Exhibit 6 is excerpts of the April 24, 2017 deposition of Cohen, who testified as MSI's Rule 30(b)(6) designee.

The protective order provides that "any Disclosure or Discovery Material that is designated as 'confidential'" constitutes "protected material." Protective Order § 2.13. It provides that "[a] Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation, or any manner deemed a related matter within the meaning of Civil Local Rule 3-12." *Id*. at § 7.1. Further, a receiving party may only disclose protected material to certain categories of individuals. *See id*. at § 7.2.

As noted, Exhibits 5 and 6 are portions of deposition transcripts. The protective order provides that in order to designate testimony as confidential and thus entitled to protection, "the Designating Party [must] identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony." Protective Order § 5.2(b). There is no indication that MSI designated any portion of the transcripts as protected testimony, and nothing in the record to support MSI's claim that they are protected material under the protective order. Therefore, there was no breach of the protective order with respect to these exhibits to the Gilotti claim.

As to Exhibit 2, which includes five pages marked "confidential," Plaintiffs argue that these documents "are not MSI documents and were not produced by Defendant in this case." Opp'n 8 (emphasis in original) (citing Sturgeon-Garcia Decl. ¶ 6).[3] Therefore, Plaintiffs argue, MSI lacks standing to enforce the protective order as it was not the "designating party." They also argue that the protective order allows for disclosure of protected material to FINRA, because it permits "a Receiving Party" to disclose confidential information to "Federal, State or local regulatory agencies, self-regulatory organizations, and law enforcement agencies." Protective

---

[3] According to MSI, the documents in Exhibit 2 were produced by a third party in response to a subpoena by Plaintiffs. *See* Mot. 5.

10

Order § 7.2(h).

Plaintiffs' arguments on this point are without merit. They do not dispute that these documents, marked confidential by a third party, constitute "protected material." Sturgeon-Garcia's submission of these documents with the Gilotti claim thus violates section 7.1 of the protective order, which provides that "[a] Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation, or any manner deemed a related matter within the meaning of Civil Local Rule 3-12." *Id*. at § 7.1. The exception in section 7.2(h) permits only a "receiving party" to disclose protected material to self-regulatory organizations, and the protective order defines "receiving party" as "a Party that receives Disclosure or Discovery Material from a Producing Party." *Id*. at § 2.14. Sturgeon-Garcia is not a party to this litigation. Finally, the protective order provides that "[w]ithin 60 days after the final disposition of this action . . . each Receiving Party must return all Protected Material to the Producing Party or destroy such material." *Id*. at § 13. It appears that Plaintiffs did not comply with this provision with respect to the documents in Exhibit 2, as this matter was dismissed on September 11, 2018, and Sturgeon-Garcia attached the documents to Gilotti's claim on February 5, 2019, well over 60 days after the dismissal.

Therefore, within seven days of the date of this order, Sturgeon-Garcia must withdraw the five pages marked "confidential" in Exhibit 2 from the Gilotti claim. By the same deadline, Plaintiffs must certify to the court that they have complied with Section 13 of the Protective Order.

//
//
//
//
//
//
//

## V. CONCLUSION

For the foregoing reasons, MSI's motion is granted in part and denied in part, and partially held in abeyance. The court defers ruling on MSI's request for an award of attorneys' fees and expenses in connection with this motion pending the outcome of the dispute regarding whether Plaintiffs' counsel is bound by the settlement agreement's confidentiality provision.

**IT IS SO ORDERED.**

Dated: July 8, 2019



_____
Donna M. Ryu
United States Magistrate Judge