UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLOTTE B. MILLINER, et al., <br> Plaintiffs, <br> v. <br> MUTUAL SECURITIES, INC., <br> Defendant. | Case No. 15-cv-03354-DMR <br><br> **ORDER DENYING MOTION TO INTERVENE** <br> Re: Dkt. No. 198 |

Vincent F. Gilotti moves pursuant to Federal Rule of Civil Procedure 24 to intervene for the purpose of unsealing a settlement agreement that was attached to Defendant Mutual Securities, Inc.'s ("MSI") motion to enforce the agreement. [Docket No. 198.] MSI opposes the motion. [Docket No. 208.] This motion is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion is denied.

## I. BACKGROUND

Plaintiffs Charlotte B. Milliner and Joann Brem filed this putative class action against MSI in 2015 alleging claims stemming from MSI's brokerage agreement with Plaintiffs. On June 1, 2018, following a settlement conference before the undersigned, the parties resolved Plaintiffs' claims and executed a written settlement agreement that contained a confidentiality provision. The parties subsequently consented to have this court conduct all further proceedings pursuant to 28 U.S.C. § 636(c). The case was dismissed on September 11, 2018.

In April 2019, MSI filed a motion to enforce the settlement agreement and the stipulated protective order entered in this case, arguing that Plaintiffs and their counsel, David Sturgeon-Garcia, breached them, including the settlement agreement's confidentiality provision. [Docket No. 176.] In relevant part, MSI presented evidence that in February 2019, Sturgeon-Garcia filed a statement of claim with the Financial Industry Regulatory Authority ("FINRA") against MSI and

five individuals on behalf of a different client, Proposed Intervenor Gilotti (the "Gilotti claim"). In his claim, Gilotti noted that Milliner and Brem settled their individual claims against MSI and dismissed the class claims with prejudice, and in support of the statement that "any and all claims held by putative class members, like Mr. Gilotti, were preserved," Gilotti cited the settlement agreement and attached a complete copy as an exhibit to his claim. [Docket No. 173-4 (Fredricks Decl. April 5, 2019) ¶ 4, Ex. 3 (Gilotti claim).][1] MSI also argued that Milliner was in breach of the settlement agreement because she had not requested a dismissal of her FINRA claims against MSI.

In connection with its motion to enforce, MSI moved to seal the settlement agreement in its entirety, as well as the portions of its motion quoting the settlement agreement. [Docket Nos. 173, 185.] Plaintiffs opposed the motion. [Docket No. 174.]

On July 8, 2019, the court ruled on portions of the motion and held in abeyance the portion of the motion regarding Sturgeon-Garcia's use of the settlement agreement pending a decision by the California Supreme Court. *Milliner v. Mut. Sec., Inc.* ("*Milliner I*"), No. 15-CV-03354-DMR, 2019 WL 2929831 (N.D. Cal. July 8, 2019). The court also ordered Sturgeon-Garcia to withdraw the settlement agreement from Gilotti's FINRA claim and granted MSI's motion to seal, finding that "[g]iven the particular circumstances of this case, where MSI argues that Plaintiffs and their counsel have breached the settlement agreement's confidentiality provision, good cause exists to permit filing the actual agreement and certain references to it under seal." *Id*. at *1, 4 (citing *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179-80 (9th Cir. 2006) and *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002)).

On July 23, 2019, Plaintiffs filed a notice of appeal of the July 8, 2019 order to the United States Court of Appeals for the Ninth Circuit. [Docket No. 197.] Gilotti filed the instant motion the following day, July 24, 2019. [Docket No. 198.] On October 9, 2019, the court issued an order on several motions, including Gilotti's motion to intervene. *Milliner v. Mut. Sec., Inc.* ("*Milliner II*"), No. 15-CV-03354-DMR, 2019 WL 5067012, at *1 (N.D. Cal. Oct. 9, 2019). In

---

[1] Sturgeon-Garcia denies that he provided the settlement agreement to Gilotti. [Docket No. 179 (Sturgeon-Garcia Decl., Apr. 22, 2019) ¶ 8.]

2

relevant part, the court held that it lacked jurisdiction to decide the matter (as well as two other pending motions) because Plaintiffs' filing of a notice of appeal of the July 8, 2019 Order had "divest[ed] the district court of its control over those aspects of the case involved in the appeal." *Id*. at *4 (quoting *Griggs v. Provident Consumer Disc. Co*., 459 U.S. 56, 58 (1982) (per curiam)). Therefore, it denied the motion to intervene without prejudice, along with the other pending motions. *Id*. at *4.

The Ninth Circuit ultimately granted MSI's motion to dismiss Plaintiffs' appeal for lack of jurisdiction. *Milliner as Tr. of Charlotte B. Milliner Tr. Dated Jan. 30, 1997 v. Mut. Sec., Inc.*, No. 19-16463, 2020 WL 4252641 (9th Cir. Mar. 31, 2020). Accordingly, Gilotti's motion to intervene is now appropriate for decision.

## II. REQUEST FOR JUDICIAL NOTICE

In connection with his motion, Gilotti asks the court to take judicial notice of two FINRA "BrokerCheck Reports" for Thomas Herbert Bock and Mary C. Evans. [Docket No. 206 (RJN).] According to Gilotti, BrokerCheck is a "free tool from FINRA to research the background and experience of financial brokers, advisers and firms." *Id*. at 1 (citing https://brokercheck.finra.org). FINRA's website states, "BrokerCheck gives you a snapshot of a broker's employment history, regulatory actions, and investment-related licensing information, arbitrations and complaints." https://brokercheck.finra.org (last visited Jun. 15, 2021).

Exhibit 1 to the RJN appears to be a BrokerCheck Report for Bock. RJN Ex. 1. Under the section, "Disclosure Events," the report states that "[a]ll individuals registered to sell securities or provide investment advice are required to disclose customer complaints and arbitrations, regulatory actions, employment terminations, bankruptcy filings, and criminal or civil judicial proceedings." *Id*. at 5. Bock's report contains three final "disclosure events," including an entry that states that an action was filed in "United States District Court" on July 21, 2015, provides the case number for Plaintiffs' lawsuit, includes a brief description of the allegations, the status "settled," and states the settlement amount. *Id*. at 9-10. It also states that "Mutual Securities, Inc." was the "employing firm when activities occurred which led to the complaint." *Id*. at 9.

Exhibit 2, which appears to be a BrokerCheck Report for Evans, similarly states that an

1  action was filed in "United States District Court" on July 21, 2015, provides the case number for
2  Plaintiffs' lawsuit, includes the status "settled," and states the settlement amount. RJN Ex. 2 at
3  10-11. It also states that "Mutual Securities, Inc." was the "employing firm when activities
4  occurred which led to the complaint." *Id*. at 10.

Gilotti asks the court to take judicial notice of the two BrokerCheck Reports pursuant to Federal Rule of Evidence 201. Under Rule 201, a court may take judicial notice of "an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). While a court may take judicial notice of "matters of public record," it may not take judicial notice of disputed facts stated in public records. *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001). "Just because [a] document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999. If a court takes judicial notice of a document, it must identify the specific fact or facts it is noticing from the document. *Id*.

It appears that Gilotti asks the court to take judicial notice of the fact that MSI "and/or its agents" reported to FINRA the case number for Plaintiffs' complaint against MSI, the fact of its settlement, and the amount of the settlement. RJN 1. MSI did not object or respond to the RJN. However, Gilotti attached the BrokerCheck Reports directly to the RJN. Neither document was authenticated by anyone with personal knowledge or described in a declaration. Additionally, the document pertaining to Evans appears to be altered with redactions on multiple pages, with no explanation. *See*, e.g., RJN Ex. 1 at 1, 3, 4. Since there is no evidence to substantiate what the documents are, Gilotti's request for judicial notice is denied.

### III. DISCUSSION

#### A. Legal Standards

"Nonparties seeking access to a judicial record in a civil case may do so by seeking permissive intervention." *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1100

(9th Cir. 1999). Rule 24(b) governs permissive intervention. It provides in relevant part that "[o]n timely motion, the court may permit anyone to intervene who . . . (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "Generally, permissive intervention under Rule 24(b) requires '(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action.'" *Blum v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013) (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)). Additionally, while "[a] motion for permissive intervention pursuant to Rule 24(b) is directed to the sound discretion of the district court," *San Jose Mercury News*, 187 F.3d at 1100, Rule 24(b)(3) instructs that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

In the Ninth Circuit, "[a] third party seeking permissive intervention purely to unseal a court record does not need to demonstrate independent jurisdiction or a common question of law or fact." *Cosgrove v. Nat'l Fire & Marine Ins. Co.*, 770 F. App'x 793, 795 (9th Cir. 2019) (citing *Beckman*, 966 F.2d at 473). "In ruling on a motion to intervene for this purpose, a court must evaluate whether the countervailing interests opposing public disclosure can overcome the presumption in favor of [the public's right of access to judicial records]," including "balanc[ing] the public interest with potential prejudice to the parties and the other factors to be considered in deciding a permissive intervention motion." *Id*. (citing *San Jose Mercury News*, 187 F.3d at 1102).

**B.     Discussion**

In this case, Gilotti seeks to intervene solely for the purpose of unsealing the parties' settlement agreement. Essentially, the court must determine whether Gilotti satisfies the applicable requirements of Rule 24(b) and whether the settlement agreement should remain under seal. *See San Jose Mercury News*, 187 F.3d at 1101-03.

Neither side addresses the timeliness of Gilotti's motion in their briefing. *See id.* at 1100-01 (analyzing timeliness of motion to intervene to challenge a protective order). They also do not discuss the Rule 24(b)(3) factors the court must consider in deciding the motion. *See Cosgrove*,

5

770 F. App'x at 795 (remanding motion for permissive intervention to unseal for consideration of permissive intervention factors). Instead, the bulk of Gilotti's motion focuses on whether the settlement agreement should remain sealed.

For its part, MSI primarily argues that the motion should be denied because Gilotti cannot satisfy the commonality requirement of Rule 24(b).[2] It also argues that Gilotti's motion is an improper motion for reconsideration of the court's July 8, 2019 sealing order that does not comply with the requirements of Local Rule 7-9. Neither argument has merit. As noted above, since Gilotti is moving to intervene to unseal a court record and not to litigate a claim on the merits, he need not demonstrate "a common question of law or fact." *See Cosgrove*, 770 F. App'x at 795 (citing *Beckman*, 966 F.2d at 473). Further, Rule 7-9 does not apply, since Gilotti is not a party to this action and is independently moving for relief. *See* Civ. L.R. 7-9(a) (providing that "any *party* may make a motion before a Judge requesting that the Judge grant the party leave to file a motion for reconsideration . . ." (emphasis added)).

Turning to the Rule 24(b) requirements, in determining whether Gilotti's motion for intervention is timely, the court must consider three factors: "(1) the stage of the proceeding at which [Gilotti] seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *San Jose Mercury News*, 187 F.3d at 1101 (citation and quotation marks omitted). None of these factors support a finding that the motion is untimely. This case was dismissed in September 2018. Gilotti filed his motion on July 24, 2019, less than three weeks after the July 8, 2019 order sealing the settlement agreement, and MSI offers no argument as to how it is prejudiced by this motion. Therefore, the court finds that Gilotti's motion is timely.

The Rule 24(b)(3) factors also do not weigh against permissive intervention. Given the stage of the proceedings and the fact that the case has long been dismissed, Gilotti's intervention for the purpose of unsealing the settlement agreement will not "unduly delay or prejudice the adjudication" of Plaintiffs' and MSI's rights. Accordingly, the court will consider the merits of

---

[2] MSI also opposed Gilotti's motion on the ground that Plaintiffs' appeal of the July 8, 2019 order to the Ninth Circuit divested this court of jurisdiction to consider the motion. As the appeal has been dismissed, this court now has jurisdiction to decide the merits of the motion.

Gilotti's request to unseal the settlement agreement.

In assessing whether documents may be filed under seal there is "a strong presumption in favor of access." *Foltz v. State Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1135 (9th Cir. 2003). The Ninth Circuit established standards governing requests to seal in *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1180-81 (9th Cir. 2006). In accordance with the strong public policy favoring access to court records, "[a] party seeking to seal a judicial record . . . bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard." *Id*. at 1178. "Under this stringent standard, a court may seal records only when it finds 'a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096–97 (9th Cir. 2016) (quoting *Kamakana*, 447 F.3d at 1179). If the court finds a compelling reason to seal a record, it must then "conscientiously balance[ ] the competing interests of the public and the party who seeks to keep" the records secret. *Kamakana*, 447 F.3d at 1179.

However, the Ninth Circuit has "carved out an exception to the presumption of access to judicial records" for "court records attached only to non-dispositive motions." *Id*. (quoting *Foltz*, 331 F.3d at 1135). The court has reasoned that "the public has less of a need for access to court records attached only to non-dispositive motions because those documents are often 'unrelated, or only tangentially related, to the underlying cause of action.'" *Id*. (quoting Foltz, 331 F.3d at 1135). "A 'good cause' showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions." *Id*. at 1180 (citing *Foltz*, 331 F.3d at 1135). The Ninth Circuit recently distinguished "dispositive" and "non-dispositive" motions. *Ctr. for Auto Safety*, 809 F.3d at 1097-98. It explained that these terms are not "mechanical classifications" and that "public access [to judicial records] will turn on whether the motion is more than tangentially related to the merits of a case." *Id.* at 1097, 1101. Therefore, a party must satisfy the more demanding "compelling reasons" standard to seal a motion that is more than tangentially related to the merits of the case. *Id*. at 1101-02.

In this case, the sealed settlement agreement was attached to a motion to enforce a settlement agreement. In that motion, MSI argued that Plaintiffs and their counsel breached the

7

settlement agreement's confidentiality provision and that Milliner failed to request dismissal of her FINRA claims against MSI in accordance with the agreement. Gilotti does not explain how the motion was "more than tangentially related to the merits" of the case, *see id*. at 1101, and the court finds that the issues presented in MSI's motion have nothing to do with the merits of the litigation. Accordingly, consistent with its July 8, 2019 order on sealing, the court finds that the good cause standard for sealing applies to the settlement agreement. *See Milliner I*, 2019 WL 2929831 at *1. [*See also* Docket No. 184 (May 21, 2019 Order re: Administrative Motion to File Under Seal).][3]

Rule 26 provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002) (citations omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" are insufficient. *Beckman*, 966 F.2d at 476. "If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Phillips*, 307 F.3d at 1211.

Here, counsel explains that MSI considered the confidentiality provision in the settlement agreement "a material term," and that without such a provision, MSI "very likely would not have agreed to settle the case." [Docket No. 185 (Ahern Decl. May 24, 2019) ¶ 2.] He explains that the confidentiality provision was important "to guard against" an argument "that MSI effectively admitted liability in this case by settling" that could be used against it in future litigation. *Id*. According to counsel, "[p]art of that calculus in deciding to settle was that Sturgeon-Garcia would not be able to try to equate the settlement to an admission of liability," and that by filing the settlement agreement with Gilotti's FINRA claim, Sturgeon-Garcia "has effectively eviscerated that material term of the settlement." *Id*. at ¶ 3. Counsel also notes that the only reason MSI filed

---

[3] As discussed below, the ruling in this motion would be the same if the court used the "compelling reason" standard.

a copy of the settlement agreement with the court was to try to enforce the agreement. He concludes that this case involves "private parties and subject-matter that does not generally affect the public interest," and that the "interest in fostering settlement through the use of confidentiality provisions outweighs any interest in the public having access to the settlement agreement." *Id.* at ¶¶ 4, 5.

The court finds that good cause supports sealing the settlement agreement. The parties' inclusion of the confidentiality provision in the settlement agreement itself supports the conclusion that they intended to keep the settlement agreement confidential and out of the public record.[4] Numerous courts in this district have recognized the importance of protecting confidential settlement communications and materials "in order to promote settlement" and have concluded that this general policy satisfies the more demanding "compelling reasons" standard to seal judicial records. *See, e.g.*, *Celgard, LLC v. Targray Tech. Int'l Inc.*, No. 19-CV-02401-VKD, 2019 WL 3841997, at *2 (N.D. Cal. Aug. 15, 2019) (finding compelling reasons favored sealing portions of records "that reveal the parties' confidential settlement communications," even though the parties "did not enter into a formal confidentiality agreement with respect to their communications"); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2020 WL 2425792, at *4 (N.D. Cal. May 12, 2020) (granting motions to seal "proposed settlement terms and actual settlement negotiations" under compelling reasons standard); *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, No. 14-CV-04050-MEJ, 2015 WL 13390186, at *3 (N.D. Cal. Nov. 10, 2015) (noting "[c]onfidential settlements benefit society and the parties involved by resolving disputes relatively quickly, with slight judicial intervention, and presumably result in greater satisfaction to the parties. Sound judicial policy fosters and

---

[4] As noted, the court denies Gilotti's request that the court take judicial notice of documents that purportedly reflect the fact that MSI and/or its agents reported the fact of and details about the settlement of this case to FINRA. However, even if the court granted Gilotti's RJN, the outcome of this motion would be the same. Gilotti contends that MSI was "required to report all of the material settlement terms of this case to FINRA within 30 days," Reply 1 (emphasis removed), and the settlement agreement permits disclosure "as required by law." Gilotti offers no authority that disclosure of any terms of the settlement agreement "as required by law" either discounts the parties' expectation that the settlement agreement would remain confidential or results in waiver of the confidentiality provision.

9

1 protects this form of alternative dispute resolution" and finding compelling reasons supported
2 granting request to seal confidential settlement agreement (quoting *Kalinauskas v. Wong*, 151
3 F.R.D. 363, 365 (D. Nev. 1993)).  Further, MSI's concern that the parties' settlement would be
4 used against it as an admission of liability finds support in the law; as the court in *Celgard*
5 explained, the policy of protecting settlement negotiations in order to promote settlement
6 "underlies Federal Rule of Evidence 408, which provides that evidence of conduct or statements
7 made during settlement negotiations is not admissible when offered to prove liability, although it
8 may be admitted for other purposes."  2019 WL 3841997, at *2 (citations omitted).

The court also finds that Gilotti's and the public's interest in this matter do not outweigh MSI's interests in keeping the settlement agreement under seal.  This is consistent with the court's July 8, 2019 order directing Sturgeon-Garcia to withdraw the settlement agreement from Gilotti's FINRA claim; as the court found, "[n]othing in the record suggests that Gilotti will be prejudiced in any way by its withdrawal, or that the settlement agreement in this case is material or even relevant to Gilotti's claim." *Milliner I*, 2019 WL 2929831, at *4.  Gilotti offers no argument or explanation regarding his or the public's interest in a settlement agreement between private parties.  *See Facebook, Inc. v. ConnectU, Inc.*, No. C 07-01389 JW, 2008 WL 11357787, at *3-4 (N.D. Cal. July 2, 2008) (finding that "the terms of the [parties'] settlement and the negotiations preceding it" are "records . . . of the kind 'traditionally kept secret'" and not subject to disclosure).

In sum, the court concludes that good cause supports maintaining the settlement agreement under seal.  Gilotti's motion to intervene to unseal the settlement agreement is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, Gilotti's motion to intervene to unseal the settlement agreement is denied.

**IT IS SO ORDERED.**

Dated: June 28, 2021



Donna M. Ryu
United States Magistrate Judge

10