United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLOTTE B. MILLINER, et al., <br> Plaintiffs, <br> v. <br> MUTUAL SECURITIES, INC., <br> Defendant. | Case No. 15-cv-03354-DMR <br><br> **ORDER ON DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT** <br><br> \*\*\*REDACTED VERSION\*\*\* <br><br> Re: Dkt. No. 176 |

Defendant Mutual Securities, Inc. ("MSI") filed a motion to enforce the settlement agreement and the stipulated protective order entered in this case, arguing in part that Plaintiffs' counsel David Sturgeon-Garcia violated the settlement agreement by submitting a copy of the agreement to the Financial Industry Regulatory Authority in connection with a third party's claim to that agency. [Docket No. 176.] On July 8, 2019, the court ruled on portions of the motion and held in abeyance the portion of the motion regarding Sturgeon-Garcia's use of the settlement agreement pending a decision by the California Supreme Court. [Docket Nos. 188 (Partially Redacted Order), 189 (Sealed Order).] The portion of the motion regarding the settlement agreement previously held in abeyance is now ripe for decision. This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion is denied.

## I.  BACKGROUND

Plaintiffs Charlotte B. Milliner and Joann Brem filed this putative class action against MSI in 2015 alleging claims stemming from MSI's brokerage agreement with Plaintiffs. On June 1, 2018, following a settlement conference before the undersigned, the parties resolved Plaintiffs' claims and executed a written settlement agreement that contained a confidentiality provision. The parties subsequently consented to have this court conduct all further proceedings pursuant to 28 U.S.C. § 636(c). The case was dismissed on September 11, 2018.

In April 2019, MSI filed a motion to enforce the settlement agreement and the stipulated

protective order entered in this case, arguing that Plaintiffs and Sturgeon-Garcia breached them, including the settlement agreement's confidentiality provision. [Docket No. 176.] Specifically, MSI presented evidence that in February 2019, Sturgeon-Garcia filed a statement of claim with the Financial Industry Regulatory Authority ("FINRA") against MSI and five individuals on behalf of a different client, Vincent F. Gilotti (the "Gilotti claim"). [Docket No. 173-4 (Fredricks Decl. April 5, 2019) ¶ 4, Ex. 3 (Gilotti claim).] Gilotti's FINRA claim included as attachments deposition transcripts used in this litigation and a document used in this litigation and marked as confidential. Additionally, Gilotti's claim noted that Milliner and Brem settled their individual claims against MSI and dismissed the class claims with prejudice, and in support of the statement that "any and all claims held by putative class members, like Mr. Gilotti, were preserved," Gilotti cited the settlement agreement and attached a complete copy as an exhibit to his claim. Gilotti claim 9, Ex. 7.[1]

In relevant part, MSI argued that Sturgeon-Garcia's use of materials from discovery in this litigation with the Gilotti claim violated the protective order and the settlement agreement's confidentiality provision. It also argued that Plaintiffs and/or Sturgeon-Garcia violated the settlement agreement's confidentiality provision by attaching a copy of the settlement agreement to the Gilotti claim.

The court issued an order on the motion on July 8, 2019. *Milliner v. Mut. Sec., Inc.*, No. 15-CV-03354-DMR, 2019 WL 2929831 (N.D. Cal. July 8, 2019). In relevant part, it granted in part and denied in part the motion with respect to the protective order and found that Sturgeon-Garcia's submission of materials from this litigation with the Gilotti claim did not violate the settlement agreement's confidentiality provision. *Id*. at *4-6.

As to MSI's argument that Plaintiffs and/or Sturgeon-Garcia violated the settlement agreement's confidentiality provision by attaching a copy of the settlement agreement to the Gilotti claim, the court held the matter in abeyance pending a ruling by the California Supreme Court on a key issue, as follows: Plaintiffs argued that they had not "disclosed anything to

---

[1] Sturgeon-Garcia denies that he provided the settlement agreement to Gilotti. [Docket No. 179 (Sturgeon-Garcia Decl., Apr. 22, 2019) ¶ 8.]

2

anyone," and that as a matter of law, Sturgeon-Garcia "is not bound by the settlement agreement's confidentiality provision because he was not a party to the agreement," citing *Monster Energy Company v. Schechter* ("*Monster Energy I*"), 26 Cal. App. 5th 54 (2018), *review granted*, 239 Cal. Rptr. 3d 662 (2018), *rev'd,* 7 Cal. 5th 781 (2019). *Milliner*, 2019 WL 2929831 at *3 (citing Pls.' Opp'n 2). The court noted that the California Supreme Court had granted review of *Monster Energy I* and found that "the question of whether Sturgeon-Garcia is bound by the confidentiality provision in the settlement agreement remains unsettled." *Id*. at *4. Accordingly, the court ordered the following:

> [P]ending the California Supreme Court's decision in *Monster Energy*, Sturgeon-Garcia shall comply with the confidentiality provision of the settlement agreement unless and until relieved of this obligation by this court. Specifically, within seven days of the date of this order, Sturgeon-Garcia must withdraw the settlement agreement from Gilotti's FINRA claim. Nothing in the record suggests that Gilotti will be prejudiced in any way by its withdrawal, or that the settlement agreement in this case is material or even relevant to Gilotti's claim. This portion of MSI's motion is held in abeyance. Within 14 days of the California Supreme Court's decision in *Monster Energy*, the parties shall submit a joint letter advising the court of the decision. The court will order further briefing, if necessary, or take the matter under submission on the papers already filed.

*Id.*

Plaintiffs then moved to stay the July 8, 2019 order in light of an anticipated motion for leave to file a motion for reconsideration. [Docket No. 190.] The court granted the request in part and stayed a portion of its order directing Plaintiffs to withdraw a certain exhibit from the Gilotti claim until further court order and gave Plaintiffs a deadline to file a motion for leave to file a motion for reconsideration as to that portion of the order. [Docket No. 191.] The court subsequently granted Plaintiffs leave to move for reconsideration, which they timely filed. [Docket Nos. 195, 201.]

On July 23, 2019, Plaintiffs filed a notice of appeal of the July 8, 2019 order to the United States Court of Appeals for the Ninth Circuit, even though this court had not yet had an opportunity to consider Plaintiffs' motion for reconsideration or to rule on the *Monster Energy* issue that it had held in abeyance in the July 8, 2019 order. [Docket No. 197.]

California's high court issued *Monster Energy Co. v. Schechter*, 7 Cal. 5th 781 (2019), on

1  July 11, 2019, affirming in part and reversing in part *Monster Energy I*. The parties notified the
2  court of the California Supreme Court's decision on July 25, 2019 and the court set a briefing
3  schedule on the impact of the decision. [Docket Nos. 200, 209.] The parties timely filed the
4  requested briefs. [Docket Nos. 212, 214, 216, 217.]

5  On October 9, 2019, the court issued an order on Plaintiffs' motion for reconsideration and
6  other pending motions. *Milliner v. Mut. Sec., Inc.* ("*Milliner II*"), No. 15-CV-03354-DMR, 2019
7  WL 5067012, at *1 (N.D. Cal. Oct. 9, 2019). The court granted in part the motion for
8  reconsideration for reasons unrelated to the instant dispute. *Id*. at *5-6. As to the outstanding
9  issue regarding the effect of *Monster Energy* on Sturgeon-Garcia's ability to use the settlement
10 agreement, the court held that it lacked jurisdiction to decide the matter (as well as two other
11 pending motions) because Plaintiffs' filing of a notice of appeal of the July 8, 2019 Order had
12 "divest[ed] the district court of its control over those aspects of the case involved in the appeal."
13 *Id*. at *4 (quoting *Griggs v. Provident Consumer Disc. Co*., 459 U.S. 56, 58 (1982) (per curiam)).
14 Therefore, it denied the outstanding portion of MSI's motion to enforce the settlement agreement
15 without prejudice, along with the other pending motions. *Id*. at *4.

16 The Ninth Circuit ultimately granted MSI's motion to dismiss Plaintiffs' appeal for lack of
17 jurisdiction. *Milliner as Tr. of Charlotte B. Milliner Tr. Dated Jan. 30, 1997 v. Mut. Sec., Inc.*,
18 No. 19-16463, 2020 WL 4252641 (9th Cir. Mar. 31, 2020). Accordingly, the outstanding portion
19 of MSI's motion to enforce the settlement agreement is now appropriate for decision.

20 **II. DISCUSSION**

21 MSI argues that Plaintiffs and/or Sturgeon-Garcia violated the settlement agreement's
22 confidentiality provision by attaching a copy of the settlement agreement to the Gilotti claim.
23 Plaintiffs respond that there is no evidence that Milliner or Brem disclosed the settlement
24 agreement to anyone, and that Sturgeon-Garcia is not bound by the settlement agreement's
25 confidentiality provision because he was not a party to the agreement.

26     **A. Legal Standard**

27 "The interpretation of a settlement agreement is governed by principles of state contract
28 law." *Botefur v. City of Eagle Point, Or*., 7 F.3d 152, 156 (9th Cir. 1993) (citing *Jeff D. v. Andrus*,

899 F.2d 753, 759 (9th Cir. 1990)). "This is so even where a federal cause of action is 'settled' or 'released.'" *Id*. (citing *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992)). Here, California contract law governs the analysis because the parties litigated and settled the case in this state. "Under California law, '[a] settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts.'" *Ashker v. Newson*, 968 F.3d 939, 944 (9th Cir. 2020) (quoting *Monster Energy*, 7 Cal. 5th at 789) (internal footnote omitted).

"Under California law, the intent of the parties determines the meaning of the contract. The relevant intent is 'objective'—that is, the intent manifested in the agreement and by surrounding conduct—rather than the subjective beliefs of the parties." *United Commercial Ins. Serv*, 962 F.2d at 856 (citations omitted). "The mutual intention of the parties is determined by examining factors including the words used in the agreement, the surrounding circumstances under which the parties negotiated or entered into the contract, and the subsequent conduct of the parties." *Ambat v. City & Cty. of San Francisco*, No. C 07-03622 SI, 2011 WL 2118576, at *2 (N.D. Cal. May 27, 2011) (citing *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Ct. App. 1998); *Hernandez v. Badger Constr. Equip. Co*., 28 Cal. App. 4th 1791, 1814 (Ct. App. 1994)).

**B.    Analysis**

The settlement agreement states that it "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Fredricks Decl. Ex. 3 at ECF pp. 149-153 (Settlement Agreement) at 1. In relevant part, the agreement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Settlement Agreement ¶¶ 1, 3. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. at ¶ 2.

The settlement agreement included a confidentiality provision, as follows:

▮▮▮▮▮▮▮▮▮   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5



Settlement Agreement ¶ 11.

The agreement was signed by three individuals: an MSI representative, Milliner, and Brem. *Id*. at p. 4.

### 1. Whether Sturgeon-Garcia is Bound by the Confidentiality Provision

It is undisputed that Sturgeon-Garcia was not identified as a party to the settlement agreement and did not sign the agreement. The parties dispute whether Sturgeon-Garcia is nonetheless bound by its confidentiality provision.

In *Monster Energy I*, the court held that an attorney representing two plaintiffs could not be liable to the defendant for breach of a confidentiality provision in a settlement agreement, even though the agreement provided that the "'[p]laintiffs and their counsel agree' to keep the terms of the agreement confidential" and the attorney signed the agreement under the words, "Approved as to form and content." 26 Cal. App. 5th at 57.

In that case, the plaintiffs in a previous action, the Fourniers, entered into a settlement agreement with Monster Energy Company ("Monster"). The agreement contained numerous references to the parties' attorneys, including a confidentiality provision that purportedly applied to the Fourniers and their counsel. *Id*. at 58-59. The agreement did not name the attorneys as parties to the agreement, but one of the attorneys, Schechter, signed the agreement to indicate his approval as to form and content. *Id*. at 60. Schechter later made statements about the settlement

1    to a reporter who included the statements in a published article. *Id*. at 61. Monster then filed a
2    lawsuit against Schechter alleging breach of contract and related claims based on the alleged
3    violation of the confidentiality provision. Schechter filed a special motion to strike (anti-SLAPP
4    motion) under California Code of Civil Procedure section 425.16, arguing that "Monster could not
5    show a probability of prevailing on its breach of contract claim because [the attorneys] were not
6    parties to the settlement agreement." *Id*. The trial court denied the motion with respect to the
7    breach of contract claim, finding that the agreement "clearly contemplates counsel as being subject
8    to the agreement because . . . plaintiffs had the authority to execute the settlement agreement on
9    behalf of their counsel, and counsel is clearly allowed and not allowed to do certain things in the
10   settlement," and because "counsel signed the document." *Id*.

   The *Monster Energy I* court reversed, finding that Monster failed to show a probability of prevailing on the breach of contract claim in part because the Fourniers' attorneys did not consent to be bound by the settlement agreement. *Id*. at 62, 65. The court observed that "[a]n essential element of any contract is the mutual consent of the parties" and that "the consent of the parties to a contract must be communicated by each party to the other." *Id*. at 65 (quotations and citations omitted). While noting that "the confidentiality provisions of the settlement agreement did at least purport to bind the Attorneys," the court held that the issue was not one of contractual interpretation, as "a party cannot bind another to a contract simply by so reciting in a piece of paper. It is rudimentary contract law that the party to be bound must first *accept* the obligation." *Id*. (quotation omitted, emphasis in original). The court concluded that "[n]o matter how plainly the contract provided that the Attorneys were bound, they could not actually be bound unless they manifested their consent." *Id*. The court found that the attorneys were not identified as parties to the agreement and that the parties could not bind them without their consent. *Id*. at 66.

   The court also examined the effect of Schechter's signature of the settlement agreement under the words, "approved as to form and content," noting that "[i]t is possible to sign a contract without becoming a party to the contract." *Id*. at 67. It held that such a signature "means only that the document has the attorney's professional thumbs-up," and "does not objectively manifest the attorney's intent to be bound." *Id*. at 68-69. The court ultimately concluded "that the Attorneys

7

were not parties to the settlement agreement, including its confidentiality provisions." *Id*. at 70.

The California Supreme Court affirmed in part, reversed in part, and remanded. It noted that the issue was whether Monster "sufficiently established a probability of prevailing on its breach of contract claim," which required Monster to show that the claim has "minimal merit." *Monster Energy*, 7 Cal. 5th at 788-89, 796. The court framed the legal question as "whether counsel's signature approving an agreement as to form and content for his clients' signature *precludes*, as a matter of law, a finding that he also intended to be bound by the agreement," and answered the question in the negative. *Id*. at 792, 795. It held that where an agreement "contains no provision purporting to bind counsel or otherwise impose any obligation on him . . . counsel's signature that he approved the agreement as to form and content could *only* mean he is approving it for his client's signature." *Id*. at 792 (emphasis in original). However, "[a]n attorney's signature on an agreement containing substantive provisions imposing duties on counsel may reflect an intent to be bound even though counsel also approves the document for his client's signature." *Id*. The court held that the determination of whether an attorney who signs a document "with a notation that it is approved as to form and content" intends to be bound by its terms "requires an examination of the agreement as a whole, including substantive provisions referring to counsel," and concluded that "a fact finder considering all the circumstances could reasonably conclude Schechter agreed to be bound." *Id*. at 792-93, 795. Therefore, Monster had "shown a probability of success sufficient to defeat [Schechter's] claim the suit lacks even minimal merit." *Id*. at 796.

Here, although the settlement agreement purports to impose confidentiality on Plaintiffs' counsel, neither Sturgeon-Garcia nor any other attorney signed any part of the agreement. Therefore, *Monster Energy* is of limited guidance since the court examined a narrow legal issue: whether an attorney's signature approving an agreement as to form and content on behalf of their clients "precludes, as a matter of law, a finding that [they] also intended to be bound by the agreement." *Id*. at 792 (emphasis removed).

Notwithstanding the narrow issue it decided, the *Monster Energy* court also discussed legal principles that apply to contracts such as settlement agreements, including consent, which it noted

8

is "[a]n essential element of any contract." *Id*. at 789 (citation omitted). Consent must be free, mutual, and communicated by each party to the other. Cal. Civ. Code § 1565; *see also Mitsui O.S.K. Lines, Ltd. v. Dynasea Corp.*, 72 Cal. App. 4th 208, 212 (1999) ("a party cannot bind another to a contract simply by so reciting in a piece of paper. It is rudimentary contract law that the party to be bound must first *accept* the obligation." (emphasis in original)). "Consent is not mutual, unless the parties all agree upon the same thing in the same sense." *Monster Energy*, 7 Cal. 5th at 789 (quoting Cal. Civ. Code § 1580). "The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe. Accordingly, the primary focus in determining the existence of mutual consent is upon the acts of the parties involved." *Id*. (citations omitted). In other words, "the reasonable meaning of [the parties'] words and acts, and not their unexpressed intentions or understandings," determines mutual consent. *Esparza v. Sand & Sea, Inc.*, 2 Cal. App. 5th 781, 788 (2016) (citation and quotation marks omitted). "[O]rdinarily, '[i]n the absence of fraud, mistake, or another vitiating factor, a signature on a written contract is an objective manifestation of assent to the terms set forth there.'" *Monster Energy*, 7 Cal. 5th at 789 (citation omitted).

Despite the inclusion of counsel in the confidentiality provision, MSI offers no evidence that Sturgeon-Garcia outwardly manifested consent to being bound by that provision or that he communicated his consent to be bound to MSI. *See Esparza*, 2 Cal. App. 5th at 788. The settlement agreement does not name Sturgeon-Garcia (or any other attorney) as a party to the agreement and he did not sign the document to indicate his approval as to its form or content.[2] MSI argues that Sturgeon-Garcia's actions support the finding that he consented to be bound by the confidentiality provision because he participated in negotiating the agreement, advised his clients to sign the agreement, and then accepted the benefits of the agreement. [Docket No. 217 at 2.] Setting aside the fact that the record does not contain any evidence supporting these facts, MSI offers no authority that an attorney may be bound by the terms of a contract or settlement

---

[2] Sturgeon-Garcia also denies that he "assent[ed] to be bound to the Confidentiality Provision." Sturgeon-Garcia Decl. ¶ 7.

9

agreement under such circumstances. Instead, it cites *Lincoln General Ins. Co. v. Tri Counties Bank*, No. CIV. S-10-1442 FCD/E, 2010 WL 3069874, at *3 (E.D. Cal. Aug. 5, 2010), for the proposition that "it is well-settled California law, that manifestations of assent may come in multiple forms and need not take the form of a signature. Rather, contract formation merely requires a manifestation of assent by an act or omission through which a party intends to show consent." (citing Cal. Civ. Code § 1581). However, *Lincoln General* is distinguishable. In *Lincoln General*, the plaintiff sued the defendant for breach of contract based on a purported agreement between the plaintiff and the defendant "to set aside funds to back a bond [the] plaintiff issued on behalf of [a third party]." *Id*. at *1. The plaintiff alleged the defendant "wrongfully refused to disburse the funds it agreed to set aside for plaintiff." *Id*. However, the defendant was the only party that signed the "set aside agreement." It moved to dismiss the claim, arguing that the fact that the plaintiff and the third party had not signed the agreement was fatal to the claim. The court rejected that argument, noting that a party may manifest assent to a contract in multiple ways other than signing the contract. It held that the "plaintiff's issuance of the Bond was its manifestation of consent to the terms" of the set aside agreement, and that the third party assented to the contract via its purchase of the bond from the plaintiff, knowing that the plaintiff required the set aside agreement. *Id*. at *3-4. In other words, the non-signing parties took affirmative actions that objectively manifested their consent to the agreement.

In comparison, MSI does not provide evidence of any act or omission by Sturgeon-Garcia "by which he intend[ed] to communicate" his consent. *See* Cal. Civ. Code § 1581. In order to establish consent to an agreement, "[t]he parties' outward manifestations must show that the parties all agreed 'upon the same thing in the same sense.'" *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998) (quoting Cal. Civ. Code § 1580)). "If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent to contract and no contract formation." *Id*. (citing Cal. Civ. Code §§ 1550, 1565 and 1580). In the absence of any evidence that Sturgeon-Garcia consented to the settlement agreement and the confidentiality provision therein, MSI has not established that he was bound by it. Accordingly, it has not established that he breached the confidentiality provision by attaching a

1 copy of the settlement agreement to Gilotti's FINRA claim.

### 2. Whether Plaintiffs Violated the Confidentiality Provision

MSI also argues that it is undisputed that Plaintiffs are bound by the settlement agreement's confidentiality provision. It asks the court to "hold Plaintiffs accountable for the numerous breaches of the settlement agreement as well." [Docket No. 214 at 5.] However, MSI offers no evidence that Milliner or Brem personally breached any provision of the settlement agreement, and does not offer any theory by which they may be found in violation of the agreement in these circumstances.

In sum, MSI has not established that Plaintiffs or Sturgeon-Garcia violated the confidentiality provision of the June 1, 2018 settlement agreement between Milliner, Brem, and MSI. That portion of the motion to enforce the settlement agreement is therefore denied.

## III. CONCLUSION

For the foregoing reasons, the portion of MSI's motion to enforce the settlement agreement that was previously held in abeyance is denied.

**IT IS SO ORDERED.**

Dated: June 28, 2021



Donna M. Ryu
United States Magistrate Judge

11